■ In the Matter of the Claim of JEFFREY L. CAPITANO, Respondent. BETHLEHEM STEEL CORPORATION, Appellant. PHILIP ROSS, as Industrial Commissioner, Respondent.—Appeal from a decision of the Unemployment Insurance Appeal Board, filed January 14, 1975. The employer appeals from the board's decision which held claimants to be eligible for unemployment insurance benefits without disqualification because they had good cause to refuse the offered employment. The board found that the wages and conditions of the employment offered to claimants were substantially less favorable than those prevailing for similar work. Claimants were offered wages of $2.885 per hour in laboring jobs for appellant, Bethlehem Steel. A United States Department of Labor, Bureau of Labor Statistics area wage survey for the Buffalo metropolitan area issued October, 1970 analyzed the wages paid to 2,809 laborers in the area and reported the median wage for laborers in the area as $3.55 an hour. Appellant contends that the Industrial Commissioner was obligated to undertake his own independent survey rather than rely upon that of the Federal Government. We find no merit to this argument nor do we find merit in the argument that the Bureau of Labor Statistics area wage survey was faulty. The appellant also claims that the board should have taken into consideration the "Employers Earnings Protection Plan" in making its prevailing wage determination. However, the record contains no evidence that the plan would elevate the wages of these

claimants to the level of the prevailing wage rate. The board's finding, that the offered wage of $2.885 per hour as laborers was substantially less favorable to the claimants than those prevailing for similar work in the locality, has a rational basis and is supported by substantial evidence. Decision affirmed, without costs. Greenblott, J. P., Sweeney and Mikoll, JJ., concur; Mahoney, J., concurs in a separate memorandum; Larkin, J., dissents and votes to reverse in a memorandum. Mahoney, J. (concurring). While I am unhappy with the structure of a law designed to alleviate temporary hardship and yet condones the right of an employee to refuse to work for an hourly rate that would compensate him at a sum equal to or slightly less than unemployment benefits, I am constrained to affirm in recognition of the fact that a decision of this court to the contrary would permit irresponsible employers to wreck the purposes of the Unemployment Insurance Law, if not the law itself, by causing ineligibility of employees who refuse to work for extremely substandard rates. Larkin, J. (dissenting). I respectfully dissent. In my view the entire purpose of the Unemployment Insurance Law is subverted when an employee may refuse work which will pay at or near the maximum amount which can be paid under the Unemployment Insurance Law ($115 per week). In the instant case, claimants were offered wages of $2.885 per hour, which in a 40-hour week would have paid as much as the claimants could have received with unemployment insurance benefits. The board found, and the majority agree, that the offered wage of $2.885 per hour was substantially less favorable to the claimants than the hourly rate prevailing for similar work in the locality. This was $3.55 per hour according to a Bureau of Labor Statistics area wage survey which was inconclusive at best, especially in light of the testimony of Leah Carmichael, associate occupational analyst with the Manpower Services Division of the New York State Department of Labor. In addition, under the earnings protection plan which was applicable to these claimants, they were guaranteed earnings at a level of 85% of their previous base earnings. There was also proof that the base rate for the laborers' jobs being offered to claimants was not indicative of their wage opportunity in that position. Normally an employee who began work in the initial laborer's position remained there only a few days after which he was given the opportunity to work at higher rated jobs, to fill in for sick or absent employees and also to participate in an incentive premium. In this regard, it is noteworthy that the employer offered to produce the earnings records of all employees who accepted jobs in the same category during the time period in which the claimants refused employment to show what the actual pay of said employees was during the period. This offer was declined. Finally, the job which the claimants were being offered had, by contractual agreement, an automatic increase to $3.385 per hour as of the following August 1. All of these factors, taken together, mandate a conclusion that there was no rational basis to support the board's determination. Because of the current municipal economic crisis, which needs no elaboration herein, and in view of the nature of the employment opportunity refused by claimants, I would invoke the direction of then Presiding Justice Herlihy, in *Matter of Bus (Catherwood)* (37 AD2d 98, 102), the seminal case out of which arose the instant proceeding, wherein he stated: "A percentage reduction in salary or wages cannot alone be controlling—'pragmatism' is a word of consequence in the field of Unemployment Insurance Law". The determination should be reversed and the matter remitted for further proceedings not inconsistent herewith.