◼ In the Matter of the Claim of BEATRICE R. MURTAUGH, Respondent, v BANKERS TRUST COMPANY OF ALBANY, N. A., Appellant. WORKERS' COMPENSATION BOARD, Respondent. — Mahoney, P. J. Appeal from a decision of the Workers' Compensation Board, filed March 23, 1984, as amended by decision filed August 7, 1984, which held that claimant was entitled to back pay.

In November 1978, claimant filed a claim with the Workers' Compensation Board charging that her dismissal from Bankers Trust Company of Albany, N. A. (hereinafter Bank) in November 1977, after eight years of service, was discriminatory within

the meaning of Workers' Compensation Law § 241. On April 15, 1982, the Board affirmed the administrative law judge's finding of discrimination. This court affirmed the Board's decision (93 AD2d 928). While that appeal was pending in this court, an administrative law judge rendered a decision which directed claimant's reinstatement to her prior employment and awarded claimant back wages for the period from January 1, 1978 to October 19, 1982. That decision was subsequently modified by allowing the Bank an offset of $2,925 for unemployment insurance benefits received by claimant. After an appeal by the Bank, the Board, by decision dated March 23, 1984, affirmed the administrative law judge's decision. On August 7, 1984, the Board amended its decision to include additional findings. This appeal ensued.

It is the Bank's position that the Board erred in awarding claimant back pay since such an award is statutorily authorized only if such loss of wages was caused by employer misconduct (Workers' Compensation Law § 120). Here, the Bank's contention that back pay was unauthorized is premised on its position that on January 1, 1978, when claimant was medically certified to return to work, she never made an effort to contact the Bank and accept its offer of reemployment made at the time of her severance on November 10, 1977. Claimant contends that no such offer of reemployment was made. The Bank also argues that claimant made no effort to mitigate her damages by seeking employment elsewhere. We disagree.

When claimant's employment was terminated, she was advised to apply for unemployment insurance benefits, her Blue Cross-Blue Shield coverage was terminated and all payments she was receiving as disability benefits had ceased. Further, the testimony of the Bank's witnesses clearly established that the only thing "offered" to claimant was a statement that she would be considered for a position if she reapplied, not that a job would be waiting. The Bank's first vice-president testified that he told claimant, "If and when you bring me a doctor's report * * * saying you can fully perform your functions, then we would consider a job if there is a job open in the department, if not, than I will turn it over to the Personnel Department for any job available within the bank." Next, the Bank's vice-president of personnel testified that the Bank filled 150 positions between November 1977 and October 1982 and that claimant was never contacted. On the basis of this testimony and that of claimant, we are constrained to conclude that the Board's decision to the effect that claimant was not given a bona fide offer of reemployment is supported by substantial evidence. Reinforcing this

conclusion is the fact that claimant received unemployment insurance benefits for 39 weeks after her dismissal without her employer ever questioning her right to such benefits, a right the Bank could have asserted if a true job offer had been made (*see,* Labor Law § 593 [2]; *Matter of Bus [Bethlehem Steel Corp. — Catherwood],* 37 AD2d 98, *affd* 32 NY2d 955).

Finally, with respect to the issue of whether claimant sought to mitigate her damages by seeking other employment subsequent to January 1, 1978, we hold that since the Bank did not develop the record beyond 1979 as to claimant's efforts to obtain employment, the issue of mitigation of damages was not before the board and cannot be raised at the appellate level for the first time (*Matter of Middleton v Coxsackie Correctional Facility,* 38 NY2d 130, 132-133). Thus, we conclude that there was substantial evidence to support the Board's finding that claimant was entitled to back pay from January 1, 1978 to October 19, 1982.

Decisions affirmed, with costs to the Workers' Compensation Board. Mahoney, P.J., Kane, Casey and Weiss, JJ., concur; Levine, J., not taking part.