PALMER, PLAINTIFF, *v.* STATE BUREAU OF UNEMPLOYMENT COMPENSATION, DEFENDANT.

Common Pleas Court, Scioto County.

No. 46252.   Decided September 19, 1961.

546

■■■■■■■■■■■■■■■■   ■■■■■■■

*Mr. Richard L. Eisnaugle*, for plaintiff.
*Mr. Mark McElroy*, attorney general, for defendant.

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

THOMPSON, J. This case is before this court on an appeal from a decision of the Board of Review, Bureau of Unemployment Compensation, disallowing a further appeal from the decision of a Referee dated March 7, 1960, denying the claimant's (plaintiff's) right to unemployment compensation benefits for the reason that the claimant refused without good cause to accept an offer of suitable work.

The facts upon which the finding was made are fully set forth in the decision of the Referee dated March 7, 1960, and are set forth verbatim as follows:

"Claimant's work history indicates that she worked for Selby Shoe Factory in Portsmouth, Ohio, for a period of around 12½ years and at Harrods Upholstering Shop from September 11, 1957, through November 20, 1959. At the latter employment, her rate of pay was $1.10 per hour as a seamstress. The proprietor died on December 27, 1959, the day before claimant was to report back to work after a seige of sickness. As a result of the proprietor's death, the shop was thereafter closed. Claimant had also worked at different times as a part time waitress in the serving of food and drinks for several concerns in this type of business. Most of her work of this kind was performed on week ends from around 6:30 p. m. to 2:30 a. m. Her rate of pay was approximately 75c per hour. Her last work of this kind was in June, 1959. Claimant was a widow with one daughter of the age of six years who was just starting to school. Claimant stated that she wanted to stay away from this type of work because of its effect upon the standing of her child at school in relation to other children. Claimant applied for unemploy-

ment compensation on December 28, 1959, and her benefit year was established as beginning December 27, 1959. Her weekly benefit amount was established at $22.00 plus $5.00 as weekly dependency allowance. On January 13, 1960, the employment section of the Portsmouth BUC Office gave a referral to her to investigate an opening at Harold's Restaurant, in the 1700 block on Gallia Street, Portsmouth, as a waitress in the serving of food and drinks. This concern enjoyed a good reputation in its field of business. Claimant testified that she asked the interviewer if it would be permissible for her to talk to the proprietor by telephone and was told that she could do so although she was supposed to go to the restaurant in person. She talked to the proprietor by telephone and was informed that there were two openings as waitresses on the first floor and another one on the second floor. Food and drinks were served on both floors. Claimant would have received $30.00 per week which consisted of six days, excluding Sundays, and eight hours per day. She stated that the hours would have been from 4:00 p. m. to 12:00 p. m. Her hourly rate of pay would have been 62½c. She did not take the job and she gave three different reasons for not having done so. They were: (1) the night work prevented her from taking care of her daughter and she would have had difficulty in getting a baby sitter to be with her. A baby sitter would have charged 50c per hour or $4.00 for each 8 hour period when claimant was at work. (2) As her daughter was just starting to school and as a childhood friend had remarked to her daughter that her mother was working in a bar, claimant preferred other type of work so as not to further embarrass her daughter when she started to school. (3) The rate of pay would have been $30.00 a week or 62½c per hour or $5.00 per day. She would have had to pay 50c per hour for a baby sitter or $4.00 per day so that there would have been very little remaining from her daily wage. She had previously earned 75c per hour in this same type of work and had been employed at Harrods Upholstering thru November 20, 1959, at an hourly rate of pay of $1.10.

"Claimant's testimony indicated that for the week ending January 16, 1960, she had made three contacts in her search for work, two of which were in person in the Portsmouth area and

the third one was by letter to a shoe factory concern in Columbus, Ohio. She stated that during this week she was fully able to work, had received no offers of work, had received no referrals other than the one pertaining to Harold's Restaurant, was willing to accept suitable work at the prevailing rate of pay, but only on a day time basis, and was fully unemployed. The evidence brings out that it was difficult to gain employment at the time in the Portsmouth area."

The reason for the decision of the Referee is further set forth in the decision of the Referee as follows:

"Although the rate of pay that claimant would have received from Harold's Restaurant would have been slightly under what she had previously received at the same type of work and was much lower than her rate of pay while employed at Harrods' Upholstering Shop, and while it is recognized that claimant had been unemployed for a relatively short period of time, yet the employment situation in Portsmouth was an unfavorable one and it would behoove anyone who is unemployed not to be unreasonably particular when a work opportunity arises. Harold's Restaurant had a good standing in the community and there was a strong likelihood that claimant would have been able to acquire a substantial number of tips in addition to her regular rate of pay. Also, had she been working in the evenings, she would have had at least a part of the day available to her to look for other employment. Considering the situation in this light, it is determined that claimant refused an offer of suitable work without good cause."

This case is controlled by Section 4141.29, Revised Code, the applicable parts of which provide as follows:

"Each eligible individual shall receive benefits as compensation for loss of remuneration due to total or involuntary partial unemployment in the amounts and subject to the conditions stipulated in Sections 4141.01 to 4141.46, inclusive, Revised Code.

"(A) No individual is entitled to a waiting period or benefits for any week unless he:

"(4) Is able to work and is both available for suitable work and making such efforts to obtain suitable work as the administrator may require, considering, along with other pertinent

factors, his chances of returning to his previous work, the methods by which an individual in his occupation normally obtains work, the length of his unemployment, and the specific conditions of employment and unemployment prevailing in his locality.

''(D) Notwithstanding division (A) of this section, no individual may serve a waiting period or be paid benefits under the following conditions:

''(2) For the duration of his unemployment if the administrator finds that:

''(b) He has refused without good cause to accept an offer of suitable work when made by an employer either in person or to his last known address, or has refused or failed to investigate a referral to work when directed to do so by a local employment office of this state or another state;

''(F) In determining whether any work is suitable for a claimant in the administration of Sections 4141.01 to 4141.46, inclusive, revised Code, the administrator shall, in addition to the determination required under division (E) of this section, consider the degree or risk to the claimant's health, safety, his prior earnings, and morals, his physical fitness for the work, his prior training and experience, the length of his unemployment, the distance of the available work from his residence, and his prospects for obtaining local work.''

The Common Pleas Court of Summit County in the case of *Wallace* v. *Bureau of Unemployment Compensation*, 81 Ohio Law Abs., 495, has defined ''good cause'' referred to in Section 4141.29 (C), Revised Code, as:

''That cause which to an ordinarily, intelligent man is justifiable reason for doing or not doing a certain particular thing.''

In that case the court held that the claimant had ''good cause'' in refusing employment which required him to work on Sunday.

The cases in Ohio involving the question presented in this case are very few, however, there are several cases in other states having unemployment compensation legislation very similar to Ohio in which similar questions have been presented.

In *Bowman* v. *Troy Launderers and Cleaners, Inc.*, the Supreme Court of Minnesota, 9 N. W. (2d), 506, the claimant was

a steam cleaner in a Dry Cleaning plant and had been so employed for about five years. As such, he earned approximately $24.00 for a forty (40) hour week. He was offered off-season employment at light garage work, stock work and as a truck driver at $20.00 for a forty-eight (48) hour week. He was not a trained mechanic or a licensed truck driver, but had done work in other departments in previously slack work periods for different rates of pay. The Director of the Bureau of Unemployment Compensation allowed his claim and the court in affirming the Director held, after quoting from the Minnesota statute, which is almost word for word the same as the Ohio statute, as follows:

"We believe that the foregoing facts which are reasonably sustained by the evidence permit the conclusion reached by the Director that claimant is not disqualified for failure to accept suitable available work offered. Section 268.09 (4) (a) supra provided that the Director shall be guided in his determination of whether work is suitable or not by consideration for the individual's safety, and morals, his physical fitness and prior training, his experience and prior earnings, his length of unemployment and prospects of securing local work in his customary occupation. In the instant case, the employment offered was less desirable from the point of view of wages and hours. It is also clear that claimant was not qualified or trained as either a mechanic or a truck driver. There was testimony that in all probability, he could very soon find employment in his special trade, because of the shortage of trained men, which evidence tends to justify his non-acceptance of employment in other lines. These facts are amply established by the evidence and are sufficient to permit the conclusion reached by the Director."

In the case of *Hagadone* v. *Kirkpatrick*, the Supreme Court of Idaho, 154 P. (2d), 181, the claimant was sixty (60) years of age and had been employed for approximately twenty-seven (27) years earning over $2.00 per hour as a saw-filer. His employer discontinued operation for the season and the claimant applied for unemployment compensation. He was offered two jobs; one, firing a boiler at 88c per hour and the other as a common laborer at 80c per hour. The Unemployment Compensa-

tion Board rejected the applicant's claim because of his failure to accept suitable work. The court in reversing the Board stated as follows:

"The fact that claimant refused the two jobs above referred to would not necessarily render him ineligible or unavailable for work in the absence of a thorough investigation on the part of the Board."

Further quoting, the court said:

"The Unemployment Compensation Law must be liberally construed to the end that its purpose be accomplished. Availability for work requires no more than availability for suitable work which the claimant has no good cause for refusing."

The Supreme Court of Pennsylvania decided two cases on April 17, 1946, brought by the *American Bridge Company* v. *Unemployment Compensation Board of Review*, 46A, (2d), 510 and 512. One case involved Catherine V. Fuller who had been employed by the American Bridge Company as a Tacker at 93c per hour from March 8, 1944 to June 6, 1945, when she was laid off due to lack of work. She registered for employment on June 11, 1945, and subsequently filed a wait-week claim for the week ending June 17, 1945, and compensable claims for the weeks ending June 24th and July 1, 1945. On June 25, 1945, she was referred to a job as a laborer at 50c per hour which she refused because of insufficient wages and because she expected to be called back by her former employer within two weeks. The Bureau of Unemployment Compensation denied her claim. Upon appeal, the Referee reversed the decision and his decision was affirmed upon the employer's appeal. The Board held in its decision "We are convinced that in all cases, a claimant should have a reasonable opportunity to obtain a position paying wages reasonably commensurate to those previously earned. Three weeks does not afford such opportunity."

The Supreme Court of Pennsylvania in affirming the Board's decision said:

"The determination of suitability of work, like availability, is largely a question of fact, and ordinarily our review is limited to ascertaining whether the Board's findings are supported by the evidence. Appellant concedes that the evidence sustained the findings and we cannot convict the Board of an error of law

in holding, that under the circumstances, a period of nineteen (19) days did not allow claimant a reasonable time within which to secure suitable work and that her refusal of the referred work was justified by "good cause."

In the other case brought by the American Bridge Company, the claimant had been a welder at a $1.10 per hour from January 26, 1944 to June 15, 1945. On June 20, 1945, she was offered employment at a Filling Station at $18.00 per week which she refused because the salary was too low. The Bureau of Unemployment Compensation disallowed the worker's claim for benefits. The Referee reversed the Bureau and the Referee's decision was sustained by the Board upon the employer's appeal. The Supreme Court of Pennsylvania in affirming the decision, held as it did in the other case, that determination of the Unemployment Compensation Board of Review that five (5) days did not allow a welder who had been employed at a $1.10 per hour, a reasonable time in which to secure suitable work, was not an error of law.

The Supreme Court of Pennsylvania in the case of *MacFarland* v. *Unemployment Compensation Board of Review*, 45 A (2d), 423, speaking of the unemployment compensation law stated as follows:

"Unemployment compensation cannot be administered upon vague theories of the law. The Unemployment Compensation Law represents "the exercise of the police powers of the Commonwealth" to abolish: Economic insecurity due to unemployment (which) is a serious menace to the health, morals and welfare of the people of the Common-wealth." Although it brings advantages to the Commonwealth and its political subdivisions by relieving them of the burden of increased poor relief assistance, it is designed, primarily, for the benefit of the worker upon whom unemployment "falls with crushing force." These benefits must not be denied him by fanciful, strained, unnatural, distorted or mere technical construction. It is a remedial statute and excepting the sections imposing taxes, its provisions must be liberally and broadly construed so that its objectives may be completely achieved. We cannot approve an administrative construction which denies compensation to an unemployed worker unless the plain language of the statute clearly excludes him from its benefits."

Other cases which hold that unemployment compensation acts should be liberally construed to protect the worker against enforced unemployment are *W. T. Grant Co.* v. *Board of Review,* a New Jersey case reported in 29 A. (2d), 858, and *Ex parte Alabama Textile Products Corporation,* an Alabama case reported in 7 So. (2d), 303.

In considering the plaintiff's rights in this case, we must not overlook the fact that her regular rate of pay as a seamstress was $1.10 per hour; that she had never worked as a waitress except on a part time basis, usually, on weekends and was never a full time employee as a waitress and that her earnings were 75c per hour for the time employed as a waitress; that had she accepted employment as a waitress at Harold's Restaurant she would have received only $30.00 per week of 62½c per hour or $5.00 per day; that since her employment would have been from 4:00 p. m. to 12:00 p. m., it would have been necessary for her to employee a baby-sitter to stay with her daughter and would have been required to pay the baby-sitter 50c per hour or $4.00 for each eight hour period while she was at work. This would have left 12½c per hour or $1.00 for each eight hour period over and above the expenses of the baby-sitter for the plaintiff. Out of this, it would have been necessary to pay the expenses of transportation to and from her place of employment.

We must also consider the fact, claimant applied for unemployment compensation on December 28, 1959, that her benefit week was established as beginning December 27, 1959; that her referral to investigate the position of Harold's Restaurant was on January 13, 1960, and that it was for this week ending January 16, 1960, that her claim was disallowed.

It is our conclusion, therefore, that considering these facts in connection with the provisions of the unemployment compensation law and particularly in connection with Section 4141.-29 (F), Revised Code, that the claimant did have "good cause" for refusing the employment offer as a waitress at Harold's Restaurant and that the decision of the Board should be reversed.

An entry may be prepared accordingly saving the defendant's exceptions.