JUDD, APPELLANT, *v.* OHIO BUREAU OF EMPLOYMENT SERVICES ET AL., APPELLEES.

(No. 77AP-321—Decided December 13, 1977.)

*Messrs. Bessey, Frasch & Lawson,* for appellant.

*Mr. William J. Brown,* attorney general, and *Mr. Eugene P. Nevada,* for appellee Ohio Bureau of Employment Services.

REILLY, J. This is an appeal from an order of the Court of Common Pleas of Franklin County affirming the decision of the Board of Review of the Ohio Bureau of Employment Services.

The trial court found that the decision of the Board of Review of the Ohio Bureau of Employment Services was lawful, reasonable, and supported by the manifest weight of the evidence. The decision of the Board of Review affirmed a referee's decision which denied appellant's unemployment benefits for his alleged failure to investigate a referral given to him by the Florida Bureau of Unemployment Compensation while appellant was temporarily residing in Florida. The Board of Review, with one dissenting member, affirmed the referee's decision. That decision reads as follows:

"Claimant filed an application for a determination of benefit rights on January 26, 1976, with respect to a bene-

fit year beginning January 25, 1976. He filed a continued claim for benefits with respect to the week ending May 15, 1976. While living in Dade City, Florida, the claimant received a card from a local office of the Florida Bureau of Unemployment Compensation, which directed the claimant to appear at said office for a job referral. On May 14, 1976, the claimant responded to the postcard and appeared at the appropriate location. At that time, claimant was informed that there was an opening at the Pasco Packing Company for a class A machinist. Claimant was further told that the rate of pay for said position was $3.45 per hour and that because of the length of time it took the claimant to appear at the office the job probably had been taken. Claimant informed the local representative of the Florida Bureau of Unemployment Compensation that he did not believe that he could work for $3.45 per hour nor did he have the necessary qualifications of a class A machinist. Claimant then left the local office of the Florida Bureau of Unemployment Compensation and did not apply for work at Pasco Packing Company.

"The above referred to section of the Ohio Revised Code provides that where an individual fails to investigate a referral to suitable work when directed to do so by a local employment office of the State of Ohio or another state his benefit rights must be suspended. In the instance [sic] case, the claimant contends that he was not specifically directed to apply for work at Pasco Packing Company and as a result did not violate the above section of the Ohio Revised Code. However, the record is clear that the claimant received a card instructing him to report to the local office of the Florida Bureau of Employment Compensation for a work referral and the matters discussed with the claimant at that office did in fact constitute a work referral. The claimant further contends that the work with Pasco Packing was not suitable. Claimant states that because his prior work had been as a machine operator, he was not qualified for a class A machinist work. However, without talking with the representatives of Pasco Packing Company, the claimant could not know what the duties of said position would constitute, and as such, cannot con-

tend that he was not qualified for the work. Claimant further contends that the pay rate of $3.45 per hour was less than his prior pay rate while employed with Rockwell International, and as such was not suitable. Said contention is without merit. If the wages offered were substantially less favorable to the individual than those prevailing for similar work in the locality of Dade City, Florida, then claimant's contention would be valid. Information received from the Florida Bureau of Unemployment Compensation shows that the wage of $3.45 per hour, was the prevailing wage for similar work in the Dade City, Florida area. From a careful review of the entire record, the Referee must conclude that the claimant failed to investigate a referral to suitable work on May 14, 1976, and his benefit rights were properly suspended.

"The Administrator's decision on reconsideration, mailed August 2, 1976, must be affirmed."

This appeal has now been perfected, including the following assignments of error:

"1. Did the Court below err in failing to find that Plaintiff's knowledge of the meaning of 'class A machinist' plus Plaintiff's knowledge of his own skills, including knowledge that a previous foreman of Plaintiff's had once given him a disciplinary notice and recommended that he be transferred to assembly and completely out of machine operations, constitute good and sufficient reason for Plaintiff to believe that he was not qualified for a position as 'class A machinist,' and good and sufficient reason for Plaintiff not to investigate a job listing under that classification.

"2. Did the Court below err in failing to find that when applicant reported to a local Bureau of Unemployment Compensation in response to a postcard advising him that there was a job opening for a 'class A machinist,' and was informed by the Bureau that the job had probably already been filled, his failure to report to the company listing the job did not constitute a 'refusal or failure to investigate a referral to suitable work' as envisioned in the Ohio Revised Code.

"3. Did the Court below err in failing to find that

when applicant had been receiving some $5.80 per hour, and was advised that the pay-rate for a particular position was $3.45 per hour, and was given no knowledge by the local Bureau of Unemployment Compensation to the effect that $3.45 per hour was the prevailing wage for similar work in the area, his failure to report to the company advertising a particular position did not constitute a 're-fusal or failure to investigate a referral to suitable work' as envisioned by the Ohio Revised Code.

"4. Did the Court below err in affirming the decision of Defendant, which decision denied Plaintiff unemployment benefits for 'refusal or failure to investigate a re-ferral to suitable work'; and in failing to reverse that de-cision; and in failing to find that Plaintiff is entitled to unemployment compensation benefits retroactive to May 15, 1976, when he was originally denied benefits by Defendant."

The assignments of error are all interrelated. Consequently, they are considered together. Appellant contends that his refusal to investigate a class A machinist position, paying $3.45, in the Tampa, Florida, area meets the good-cause standard in R. C. 4141.29(D)(2)(b) because he is included by his union as a machine operator with a wage rate of $5.80 in Columbus, Ohio. The disparity between the two positions and their respective wage rates, in essence, is appellant's standard against which good cause is to be applied. Appellant asserts that the work offered was unsuitable for two reasons: first, according to his union classification, the position was of a higher skill standard; and second, an earlier disciplinary notice which states that he should not operate machines of any kind. The first reason is based upon appellant's testimony concerning what he thought the referral job would require as to skill. The second is from evidence which the Board of Review and the Court did not have the opportunity to consider because it was not part of the record.

As to appellant's first contention, we note the transcript as follows:

"Q. Well did either of the employment agents make a

referral to you saying that they wanted you to check this job out?

"A. No, sir, they sure did not.

"Q. Did they ever tell you that they were making a referral in the sense that if you would refuse they would report you to the unemployment authorities and;

"A. No, sir.

"Q. Okay. Well why was, why did they tell you that the job has possibly already been taken, could you explain that to us, to the examiner?

"A. Well see this card had been, see, I don't have no mail box down where I used, where I lived in Florida and so it had to be sent to a Post Office and I was about two weeks of getting up to the Post Office, I didn't know I had any mail up there and I was about two weeks of getting up there to the mail, Post Office to check on the mail.

"Q. And once you came, came, came and got the card from the Post Office you then went to the employment authorities?

"A. Yes, sir, straight that same day.

"Q. And is your sworn testimony that they did not say 'Investigate this employment opportunity'?

"A. No, sir, they did not say to investigate this, that;

"Q. Okay. Could you explain a little more fully now why you were so insistent about the classification of the job? Why does that make such a difference to you?

"A. Well the classification, it was out of my classification (Mr. Hatcher interrupts).

"Q. Would you consid—

"A. I, I didn't think I could do the work really, mostly, because it was, it probably dealt with, more or less operating and set, setting up and probably repairing of, of machinery.

"Q. Well and your own opinion being a machine operator would you say that you were suited for this job?

"A. No, sir, I don't, I don't think that I would have been suited for the job, but it, you know, I was just, I was just a machine operator and setup. I had never really, you know, also, you know, repaired machines and operated a

great, real great big number of machines, you know, you know what I'm talking about.

"Q. Okay. Did either of these two employment agents ask you, did you have experience in this type of work or was experience necessary?

"A. To my ability they never did ask me if I had any experience in this, in that.

"Q. Did they tell you that experience in this type of job was required by the employer? In other words, whether, did they tell you whether or not he would train you for this position.

"A. No, sir.

"Q. Did you ask them whether or not experience was necessary or this was never mentioned in the conversation you had?

"A. It was just never mentioned, this;

"Q. Okay. Well why did you report on one of your Interstate claims that you had refused employment, an employment offer at least?

"A. Well I, I figured I had to let the unemployment office know that, that, you know;

"Q. But you just stated that it wasn't a job offered made to you?

"A. Yes, I know, but, you know, I was just trying, you know, let, let the unemployment office know that I had went in to check on a job at the employment office. More or less, you know.

"Q. Have you finished?

"A. Yea.

"Q. Okay.

"Mr. Hatcher: At this point Mr. Examiner, I don't have any further questions.

"The Referee: Okay. I'd like to ask a supplemental question now.

"Redirect Examination of Claimant, Clarence E. Judd:

"By the Referee:

"Q. Mr. Judd, it's your testimony from the questions of Mr. Hatcher, that they didn't tell you to go out and look at this job. What did they think you, what did you think that they wanted you to do?

"Mr. Judd:

"A. They, they more or less;

"Q. I didn't ask you what they said. Please, just answer my question. What did you think it was?

"A. What do you mean?

"Q. Well the whole business. Didn't you think, do you think it was a referral of work?

"A. I think it was just that they, they never even had a job there to, tell you it had been already taken."

The Supreme Court has written, in *Kontner v. Board of Review* (1947), 148 Ohio St. 614, at page 622:

"It is true that the referral work paid considerably less than the former work of claimants, but the statute does not require the remuneration, hours or other conditions of work to be as favorable as the former work in order to justify a refusal of a referral. The remuneration, hours or other conditions of work offered are not to be substantially less favorable than those prevailing for similar work in the locality, that is, work similar to that which is offered."

The basis for the Board's requirement that the referral be first investigated before its suitability is determined is to ascertain the true nature of the job involved. In this case there is a question concerning what is a class A machinist at the Pasco Packing Plant in Florida. It could be that it is quite different from a class A machinist at Rockwell International in Columbus, Ohio, appellant's former employer. Moreover, it is possible that appellant had the necessary skills to perform the work. In addition, the failure to investigate does not resolve the issue of whether Pasco would have trained appellant for the job if he did not have the necessary expertise at the time. At any rate, the trier of the facts could reasonably have found that appellant had a duty to at least investigate the referral before determining its suitability, considering his background and experience. The Board's determination that such should be done, simply translated, means that the questions of training and difference of job classification and suitability could be answered by appellant's investigation. Therefore, it was not error for the trial court to find upon appeal from

a decision of the Board of Review, Ohio Bureau of Employment Services, considering the entire record, that such decision was not unlawful, unreasonable, or against the manifest weight of the evidence.

Appellant also attempts to show good cause in his refusal by presenting at this stage of the appeal the disciplinary notice he had received while at his previous employment. He contends this proves he had no machine operator's skill and, therefore, could not perform the work at Pasco. This may have validity, but it cannot be considered by this court upon appeal. We note the fourth paragraph of the syllabus in *Brown-Brockmeyer Co.* v. *Roach* (1947), 148 Ohio St. 511:

"A rule of the Unemployment Compensation Board of Review, requiring an appellant, who desires to offer additional evidence to that board, to set forth in his application a brief statement of such evidence, together with the reason the evidence was not produced at the hearing before the referee, and requiring the appellant also to specifically enumerate in his application, his objection to the decision, and to set forth sufficient references to the evidence taken before the referee to show the error complained of, is a valid rule of procedure."

In applying R. C. 4141.28(O), Common Pleas Courts are reviewing courts, limited to the records certified by the Board of Review. We note *Hall* v. *American Brake Shoe Co.* (1968), 13 Ohio St. 2d 11, at pages 13-14, as follows:

"The Court of Common Pleas is not authorized to *try* the issues of fact in this kind of proceeding. Pursuant to Section 4141.28[O], Revised Code, it is limited to finding 'that the decision [of the board of review] was unlawful, unreasonable, or against the manifest weight of the evidence,' in which event, 'it shall reverse and vacate such decision or it may modify such decision and enter final judgment in accordance with such modification, otherwise [it] shall affirm such decision.'

"In approaching its finding, the Court of Common Pleas is not authorized to receive evidence but 'the appeal shall be heard upon such record certified by the board' and

'a bill of exceptions shall not be required.' Circumscribed as they are by that language of Section 4141.28[O], Revised Code, the proceedings before that court are but a *review* of the determination of the board of review in which the 'record certified by the board' is the equivalent of 'a bill of exceptions setting forth that part of the evidence and such other matters occurring during the progress of the trial not contained in the transcript upon which the appellant asserts his claims of error,' as described by Section 2321.05, Revised Code."

The Board did not have the opportunity to consider this notice because appellant chose not to introduce it. Appellant also stresses the wage difference between his former job and the Pasco referral. His contention is that such difference is good cause for his refusal. It is stressed that there was a duty, however, to at least investigate the referral by appellant. In any event, we note the second paragraph of the syllabus of *Pennington* v. *Dudley* (1967), 10 Ohio St. 2d 90, as follows:

"Whether work is 'suitable work' within the meaning of Section 4141.29, Revised Code, is a question of fact for determination by the trier of the facts."

Thus, the question of suitable work is a question of fact for the determination of the trier of facts. Again, the issue boils down to appellant's responsibility to at least investigate the referral to determine whether the wage was actually within reasonable guidelines. In sum, the record, as noted above, shows that, although there was no explicit order to appellant to investigate the referral, the Referee could have reasonably found that such an offer of referral was in fact made to him. Further, the Referee could have found that the wages offered were within the range prevailing in Dade City, Florida, at the time.

Accordingly, for the foregoing reasons, appellant's assignments of error are not well taken and are overruled. Whereupon, the judgment of the trial court is affirmed.

*Judgment affirmed.*

STRAUSBAUGH, P. J., and HOLMES, J., concur.