PRATT, APPELLANT, v. KIRBY COMPANY ET AL., APPELLEES.

(No. 47720—Decided July 16, 1984.)

*Tricarichi, Carnes, Kube & Weinberger* and *Peter H. Weinberger,* for appellant.

*David R. Cook, Anthony J. Celebrezze, Jr.,* attorney general, and *Q. Albert Corsi,* for appellees.

NAHRA, J. Margaret M. Pratt (claimant) was employed by the Kirby Company from April 20, 1966 to December 1, 1980. Claimant was laid off from her job as a parts coordinator in October 1980. On December 1, 1980, Kirby Company offered claimant an assembly line job, which she refused. She was then dismissed.

Claimant filed for unemployment benefits on December 3, 1980. The Administrator of the Bureau of Employment Services found that claimant had refused an offer of suitable work, and disallowed her claim for benefits. Claimant appealed this decision to the Board of Review, Bureau of Employment Services. A referee of the Board of Review conducted a hearing, and, subsequently, affirmed the administrator's decision. Claimant then filed an application to institute a further appeal which was denied by the Board of Review on August 20, 1981.

Claimant's appeal to the court of common pleas was dismissed on October 11, 1983. Claimant timely appealed.

The sole assignment of error is that:

"The Board of Review's decision that appellant Margaret Pratt was not entitled to unemployment compensation benefits on the basis that she refused suitable work was against the weight of the evidence."

Claimant specifically maintains that the offer of work was unsuitable because: the work would have been detrimental to her health; she would have been physically incapable of doing the proffered work; and, but for discrimination by the employer, she would have been offered a "better" job.

Claimant was denied benefits for the entire period of her unemployment pursuant to R.C. 4141.29(D)(2)(b), which provides in the pertinent sections:

"(D) Notwithstanding division (A) of this section, no individual may serve a waiting period or be paid benefits under the following conditions:

"* * *

"(2) For the duration of his unemployment if the administrator finds that:

"* * *

"(b) He has refused without good cause to accept an offer of suitable work when made by an employer either in person or to his last known address * * *."

Claimant maintains that in light of her unrebutted testimony the administrator was required to find for her pursuant to R.C. 4141.29(E) and (F), which provided (see Am. Sub. S. B. No. 160, eff. Oct. 31, 1980, 113th General Assembly) in relevant part:

"(E) No individual otherwise qualified to receive benefits shall lose the right to benefits by reason of a refusal to accept new work if:

"* * *

"(4) The remuneration, hours, or other conditions of the work offered are substantially less favorable to the individual than those prevailing for similar work in the locality.

"(F) In determining whether any work is suitable for a claimant in the administration of sections 4141.01 to 4141.46 of the Revised Code, the administrator shall, in addition to the

determination required under division (E) of this section, consider the degree of risk to the claimant's health, safety, and morals, his physical fitness for the work, his prior training and experience, the length of his unemployment, the distance of the available work from his residence, and his prospects for obtaining local work."

The statute requires two separate determinations to be made in order to deny the claim: first, that the claimant has refused suitable work; and, second, that the refusal was without good cause. Although, the inquiries are obviously interrelated, separate tests have developed for each inquiry. Claimant's appeal presents both issues.

The claims that the proffered work presented a health hazard and that claimant was unable to do the work go to the issue of unsuitability. The discrimination claim is examined under the just cause analysis.

The Supreme Court has held that "[w]hether work is 'suitable work' * * *, will ordinarily be a question of fact for determination by the trier of the facts. * * *" *Pennington* v. *Dudley* (1967), 10 Ohio St. 2d 90, 94-95 [39 O.O.2d 94]. The court should only disturb this trier-determination if it finds as a matter of law the work is "unsuitable." *Id.* at 95.

We are unable to conclude that the work was unsuitable as a matter of law, where the evidence introduced at the hearing demonstrated that the claimant would have been continued at approximately her current hourly wage of $7.22 while at the same plant, and that she would have continued to work the same number of hours.

The finding of the referee that the proffered job was not a threat to claimant's health is supported by the manifest weight of the evidence. Claimant testified that the proffered job was dirty. A co-worker also testified that when performing at least one of the jobs in the department, the employee is required to wear a mask. However, claimant further testified:

"The polishing job is a very dirty job. They have to wear masks in there and it's detrimental to the health, and of course, you have to have great strength to be able to polish. Now the bench, the filing bench [the proffered job] itself, *I really don't know anything about it.* I just know it's connected with that department." (Emphasis added.)

The only information in the record about a health risk was the claimant's testimony that the job was dirty. In the absence of any testimony showing that the precautions taken by the employer were inadequate, the referee's decision is supported by the manifest weight of the evidence.

The evidence also fails to demonstrate that claimant was physically unable to do the proffered work. The only testimony about claimant's capacity to do the work was that, although claimant had never performed this specific job, she would have received adequate training. This claim is without merit.

The claimant's final allegation is that she would have been recalled to a better job, but for the employer's sex discrimination. This claim presents the issue whether she declined the work "with good cause." The test for good or just cause under R.C. 4141.29 was set out in *Peyton* v. *Sun T.V.* (1975), 44 Ohio App. 2d 10 [73 O.O.2d 8]. The court stated:

"* * * There is, of course, not a slide-rule definition of just cause. Essentially, each case must be considered upon its particular merits. Traditionally, just cause, in the statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act. * * *" *Id.* at 12.

We cannot agree that the manifest weight of the evidence demonstrates that claimant, as an ordinarily intelligent person, was justified in declin-

ing the work. The evidence demonstrated that the proffered job had the same pay, hours, and location. The claimant was physically able to do the work. Additionally, if the claimant had returned to her job, she would have been entitled to assert her seniority and "bump" into a more desirable job. By remaining on the job, she would not have been precluded from pursuing other remedies for discrimination while continuing to receive the same remuneration at the same location.

The judgment is affirmed.

*Judgment affirmed.*

CORRIGAN, C.J., concurs.

JACKSON, J., dissents.

JACKSON, J., dissenting. Respectfully, I dissent.

Margaret Pratt was laid off in October 1980 from her job as parts coordinator with the Kirby Company, a vacuum cleaner manufacturer. In December 1980 she was recalled to work at the filing bench in the polishing area. She refused this offer of employment, and, on the basis of this refusal, she was denied unemployment compensation.

The substantive issue in this case is whether the appellant unjustifiably refused "suitable work" within the meaning of R.C. 4141.29(D)(2)(b), the relevant portion of which provides:

"(D) * * * [N]o individual may * * * be paid benefits under the following conditions:

"* * *

"(b) He has refused without good cause to accept an offer of suitable work when made by an employer either in person or to his last known address, or has refused or failed to investigate a referral to suitable work when directed to do so

by a local employment office of this state or another state; provided, that this division shall not cause a disqualification for a waiting week or benefits under the following circumstances:

"(i) When work is offered by his employer and he is not required to accept the offer pursuant to the terms of the labor-management contract or agreement, *or pursuant to an established employer plan, program, or policy* * * *." (Emphasis added.)

The procedural context of this case is that it is on appeal from a decision of the court of common pleas, affirming the decision of the Bureau of Employment Services, denying appellant's claim for benefits. The statutory standard of review is that the administrative decision shall be affirmed unless it is "unlawful, unreasonable, or against the manifest weight of the evidence." R.C. 4141.28(O).

The appellant testified that there were three reasons why she refused work in the polishing department. First, because a "rough breed of men" worked there, and she would be the only woman. Second, the job is noisy, and dirty to the extent that workers in the polishing department are required to wear a mask. Third, because three men with four to eleven years *less* seniority than she[1] were recalled and were given jobs of higher classification than the job she was offered. She was very precise in her testimony.[2] She named the men, stated their starting dates with the company from a seniority list, and identified the jobs they were offered. She testified also that this was in violation of company policy set forth in their rule book and a memorandum sheet distributed by her employer.

The appellee, the Kirby Company, offered no evidence on its behalf.

Two issues are presented by these

---

[1] Appellant was hired by appellee company April 20, 1966.

[2] See Appendix "A."

facts. First, was appellant offered "suitable work," within the meaning of R.C. 4141.29(D)(2)(b). The second is whether appellant was not required to accept this offer pursuant to the employer's "policy," as provided in R.C. 4141.29(D)(2)(b)(i).

The appellant bears the burden of proving that she is entitled to benefits. *Shannon* v. *Bur. of Unemployment Comp.* (1951), 155 Ohio St. 53 [44 O.O. 75], paragraph one of the syllabus; *Kontner* v. *Bd. of Review* (1947), 148 Ohio St. 614, 622 [36 O.O. 241]. However, there is no provision of law requiring the claimant to prove her case by "clear and convincing evidence." The decision appealed from imposed this higher burden upon the appellant.[3] For this reason the administrative decision ought at a minimum to be reversed, and the cause remanded for a determination in accordance with the proper standard of proof, on the issue of the "suitability" of the offered work.

However, I would not merely remand, but reverse and enter judgment for appellant, on the second issue presented by the facts. It was uncontested that the employer failed to follow its own seniority rules in offering higher classification jobs to men with less tenure. Whether this was an act of sex discrimination it is unnecessary for us to determine, because it was clearly a violation of company policy, and, pursuant to R.C. 4141.29(D)(2)(b)(i), appellant was justified in refusing the offer of employment.

This result is not only required by the plain wording of Ohio law, but under the circumstances of this case, justice demands it.

Appendix "A"

Appellant's testimony in relation to the seniority issue was as follows:

"Q. Now at the time that you were, or at the time that you had the discussion with reference to your recall, with Mr. Pamer, did you know of any jobs or did you request any jobs in, that were of a higher classification to which you felt you were entitled?

"A. Yes. I knew of the fact that the other gentleman, Steve Pohorence (phonetic) who was laid off the same period that (Referee interrupts).

"THE REFEREE: How do you spell his name for the record?

"MR. WEINBERGER: The uh, spelling is Pohorence, P-O-H-O-R-E-N-C-E, Steven, and we happen to have the seniority list here and his seniority day was April 1, 1977.

"BY MR. WEINBERGER:

"Q. Anyway, proceed and tell us what job he had been assigned upon recall.

"MISS PRATT:

"A. Okay. Upon recall he was given back the exact job that he was laid off from, which was an A-classification, the same classification I had, and it was, originally had started out in the service department, which the company then put it down into inspection, but basically what it broke down to was opening up old vacuum cleaners and determining, taking the new parts and determining what parts were covered under warranty and what parts weren't covered under warranty and so forth, but it was a job that I had worked prior to Steve getting the job.

"Q. Well was it a job of higher classification than that of the polishing department?

---

[3] The administrator held, in relevant part:

"No clear and convincing evidence has been introduced by the claimant to establish that this offer of employment, made by The Kirby Company, would have been detrimental to the claimant's health, safety or morals."

"A. Yeah. Well, yes. It was not only higher, but it also was a job that paid a few cents more than I was actually making at the time, as a parts coordinator.

"Q. Okay. Now you've also, uh, there was a gentleman by the name of Jose, was there not, who was called back to a position that was of a higher classification?

"A. Yes. There were two jobs in the machine shop. Again, with, it was a better classification job. It would've been in the same pay area, pay scale that I was on.

"A. Are you·talking about Jose Torres?

"A. Yes.

"MR. WEINBERGER: Okay. That's spelled T-O-R-R-E-S.

"BY MR. WEINBERGER:

"Q. And his seniority date was April 22, 1970. Is that right?

"MISS PRATT:

"A. I, I believe that's the gentleman. We have so many Joses.

"MR. WEINBERGER: Vasquez.

"MISS PRATT:

"I think it is. I think it is Jose out there.

"BY MR. WEINBERGER:

"Q. Well in any event this gentleman by the name of Jose was assigned to what job classification?

"MISS PRATT:

"A. He was assigned in the machine shop to an A-classification job.

"Q. And is that a job of a higher class than that to which you were assigned in the polishing department?

"A. Yes. It's (Mr. Weinberger interrupts).

"Q. Now, I think you've also previously told me that a gentleman by the name of Ray —

"A. Yeah, Stepsicker (Mr. Weinberger interrupts).

"Q. Let's see if we can find on this. This gentleman, who you've been talking about by the name of Ray, is Raymond Fristik, F-R-I-S-T-I-K, with a seniority date of September 30, 1970. Is that correct?

"A. Yes, sir.

"Q. Okay. And what job classification was he assigned upon recall?

"A. He was placed into the main, machine shop, again an A-classification.

"Q. Is there any — there was a bumping system as a result of a company policy prior to these layoffs. Is that right?

"A. Yes, sir.

"Q. Now is there any reason why you couldn't bump into these jobs that these gentlemen were assigned to upon recall in December of 1980?

"A. Uh, they, they didn't allow it. They didn't offer it. I should've by rights I should've been offered that privilege, but they didn't offer it."