FELDMAN, APPELLANT, *v.* LOEB ET AL., APPELLEES.

(No. 51950 — Decided April 6, 1987.)

*Crede C. Calhoun,* for appellant.
*Patrick R. Hanrahan,* for appellee Lawrence R. Loeb.
*Anthony J. Celebrezze, Jr.,* and *Renee Scott Chestang,* for appellee Administrator, Ohio Bureau of Employment Services.

ANN MCMANAMON, J. This dispute over unemployment compensation arose between two attorneys, appellant Marvin J. Feldman ("the employer") and appellee Lawrence R. Loeb ("the claimant"). The employer, ostensibly dissatisfied with the parties' salary arrangement, cancelled the employment contract and offered to retain the claimant on a "commission" basis. The claimant balked and filed for unemployment compensation benefits.

The Administrator of the Bureau of Employment Services, an appellee herein, allowed the claim. The

employer appealed to the board of review, and a referee of the board modified part of the administrator's determination but affirmed the claimant's entitlement to benefits. The board disallowed further appeal, and the court of common pleas affirmed the board's decision. The employer timely appeals and presents two assignments of error, neither of which mandates reversal.[1]

In his first assignment of error, the employer contends the claimant refused suitable employment and should have been disqualified from receiving benefits. R.C. 4141.29 states in part:

"(D) Notwithstanding division (A) of this section, no individual may serve a waiting period or be paid benefits under the following conditions:

"* * *

"(2) For the duration of his unemployment if the administrator finds that:

"* * *

"(b) He has refused without good cause to accept an offer of suitable work when made by an employer either in person or to his last known address * * *.

"* * *

"(E) No individual otherwise qualified to receive benefits shall lose the right to benefits by reason of a refusal to accept new work if:

"* * *

"(4) The remuneration, hours, or other conditions of the work offered are substantially less favorable to the individual than those prevailing for similar work in the locality.

"(F) * * * [I]n determining whether any work is suitable for a claimant in the administration of sections 4141.01 to 4141.46 of the Revised Code, the administrator shall, in addition to the determination required under division (E) of this section, consider the degree of risk to the claimant's health, safety, and morals, his physical fitness for the work, his prior training and experience, the length of his unemployment, the distance of the available work from his residence, and his prospects for obtaining local work."

The referee's findings of fact are largely undisputed. In September 1981, the parties executed an employment contract which provided the claimant with a starting salary of $24,000, rising to $28,000 for 1982. The benefits included paid medical insurance, two weeks of paid vacation, automobile expenses, and a KEOGH account into which the employer would contribute an amount equal to fifteen percent of the claimant's salary. Although the employer's office was open from 9:00 a.m. to 5:00 p.m., the claimant was expected to work longer hours when necessary. All files and fees were deemed the property of the employer, who retained a right of control over all cases.

During 1982 the employer grew dissatisfied with the arrangement for reasons not pertinent to this appeal.

---

[1] The assignments of error are:

I

"The court erred in affirming the conclusion of the referee that the offer of employment was unsuitable because of the length of the claimant's unemployment even though the terms of employment offered by appellant were similar to those prevailing for similar work in the locality."

II

"The referee erred in concluding that the delivery to claimant of two saving deposit books totally paid for by the appellant in a KEOGH Pension Plan did not constitute 'payment' to claimant of the amount deposited under Revised Code Section 4141.31(A)(3)."

On January 25, 1983, three weeks after the execution of a new but substantially similar contract, the employer notified the claimant of his intent to cancel the contract. The employer proposed a new agreement in which the employer would provide office and secretarial facilities and, in exchange, the claimant would be permitted to retain fifty percent of any fees he generated. All of the claimant's contract benefits under the previous contract would be terminated. When the claimant rejected the offer, the employer proposed to guarantee the claimant a draw of $1,000 per month, and the difference, if any, between this amount and the claimant's monthly fees would be repaid to the employer at the end of the year. Again the claimant rejected the offer.

The referee, in applying R.C. 4141.29(E)(4), found that the remuneration, hours, and other conditions of the employer's proposal were not substantially less favorable than those prevailing in the Greater Cleveland area. This finding is problematic because no evidence was presented on the issue at the hearing. Nonetheless, we deem this error inconsequential because the referee based his determination on other grounds.

The referee found the proposed employment unsuitable because the claimant would have suffered a substantial reduction in pay. The referee compared the claimant's 1982 income — the $28,000 salary, $4,200 KEOGH contribution, and various benefits — with the figure of $21,439.07, an amount representing "commissions" the claimant would have earned if the new proposal had been in effect during 1982. The unsuitability was heightened, the referee reasoned, by the relatively brief "length of his unemployment," a factor to be considered under R.C. 4141.29(F).

The suitability of employment in this context is mainly a question of fact. *Pennington* v. *Dudley* (1967), 10 Ohio St. 2d 90, 39 O.O. 2d 94, 226 N.E. 2d 738, paragraph two of the syllabus; *Pratt* v. *Kirby Co.* (1984), 19 Ohio App. 3d 188, 19 OBR 296, 482 N.E. 2d 1318. The determination of this factual issue is primarily within the province of the referee and the board of review. *Brown-Brockmeyer Co.* v. *Roach* (1947), 148 Ohio St. 511, 518, 36 O.O. 167, 170, 76 N.E. 2d 79, 84. Thus, the scope of review is necessarily circumscribed: "A reviewing court can not usurp the function of the triers of fact by substituting its judgment for theirs. * * *" *Simon* v. *Lake Geauga Printing Co.* (1982), 69 Ohio St. 2d 41, 45, 23 O.O. 3d 57, 60, 430 N.E. 2d 468, 471. The board's determination need only be supported by "some competent, credible evidence." *C.E. Morris Co.* v. *Foley Constr. Co.* (1978), 54 Ohio St. 2d 279, 8 O.O. 3d 261, 376 N.E. 2d 578, syllabus; *Central Ohio Joint Vocational School Dist. Bd. of Edn.* v. *Ohio Bur. of Emp. Serv.* (1986), 21 Ohio St. 3d 5, 8, 21 OBR 269, 271-272, 487 N.E. 2d 288, 291. The standard to be employed by the court of common pleas is whether the decision was "unlawful, unreasonable, or against the manifest weight of the evidence," R.C. 4141.28(O), and our role is to determine whether the court abused its discretion. *Angelkovski* v. *Buckeye Potato Chips Co.* (1983), 11 Ohio App. 3d 159, 11 OBR 242, 463 N.E. 2d 1280.

In concluding that the claimant would incur a substantial reduction in pay, the referee recognized that any attempt to calculate an approximate figure would be inherently speculative. The fees generated by the claimant under the salary arrangement provide an unsatisfactory basis for comparison because the claimant presumably lacked the incentive to generate fees as he necessarily would have had to do under a pure commission contract.

However, the parties presented a great deal of testimony about the claimant's 1982 performance. This evidence, considered with the fees he did generate, reasonably supports the referee's determination that the claimant would have incurred, at least initially, a substantial reduction in income.

The employer points out that the statute does not expressly allow consideration of a reduction in income. Under the literal terms of the statute, the new rate of pay is relevant only when compared to the remuneration "prevailing for similar work in the locality." R.C. 4141.29(E)(4). A review of the case law, however, demonstrates that this reading of the statute is unsupportable.

There is ample authority for permitting the referee to consider the claimant's reduction in pay. See, *e.g.,* *Palmer* v. *State Bur. of Unemp. Comp.* (C.P. 1961), 90 Ohio Law Abs. 545, 19 O.O. 2d 363, 177 N.E. 2d 806; *Leach* v. *Bd. of Review* (1963), 3 Ohio App. 2d 314, 32 O.O. 2d 425, 210 N.E. 2d 395, disapproved on other grounds in *Pennington, supra; Bortz* v. *Lakewood Foods Serv.* (May 22, 1980), Cuyahoga App. No. 41010, unreported; *Watson* v. *Bd. of Review* (Feb. 28, 1986), Trumbull App. No. 3503, unreported.

Although the issue of whether the statute permits consideration of the pay reduction is a question of law, the further determination of whether the change in pay or other conditions renders the employment unsuitable is a factual issue within the province of the board of review. We hold that the board's determination in this case is supported by some competent, credible evidence. The claimant was faced not only with a material reduction in pay, but with an inability to determine the extent of that reduction.

We further agree with the conclusion, implicit in the referee's findings, that a claimant should not be required to accept proffered new employment immediately, at a substantially lower rate of pay. However, in making this observation we are mindful of the procedural posture of this case, and that this issue too is within the board's discretion. See *Pennington, supra,* at 95-96, 39 O.O. 2d at 97, 226 N.E. 2d at 742 (finding error where the reviewing court reversed the board of review and held as a matter of law that new employment offered prior to the claimant's separation was not suitable employment).

Accordingly, the employer's first assignment of error is not well-taken.

In his second assignment of error, the employer contends the claimant's unemployment compensation benefits should have been offset by the pension funds in the claimant's KEOGH account. R.C. 4141.31 states in part:

"(A) Benefits otherwise payable for any week shall be reduced by the amount of remuneration a claimant receives with respect to such week as follows:

"* * *

"(3) * * * payments in the form of retirement, or pension allowances under a plan wholly financed by an employer which payments are paid either directly by the employer, or indirectly through a trust, annuity, insurance fund, or under an insurance contract whether payable upon retirement, termination, or separation from employment * * *."

The referee found that the KEOGH account did not constitute a "payment" by the employer. The referee's determination was based in part on his finding that the claimant could not withdraw the monies without incurring a penalty.

We agree with the referee's ultimate disposition of this issue, but for different reasons. R.C. 4141.31(A) requires a reduction in benefits for a particular week of unemployment only if remuneration is received "with

respect to such week." The statute clearly requires that the remuneration be allocable to the period of unemployment. The allocability is ensured by the requirement under paragraph "(A)(3)" that the remuneration be "payable upon retirement, termination, or separation from employment * * *." It may be unnecessary that the claimant actually receive the payment during the period of unemployment, but some nexus between the receipt and the unemployment is essential.

The distinction is illustrated by *Budd Co. v. Mercer* (1984), 14 Ohio App. 3d 269, 14 OBR 298, 471 N.E. 2d 151. In *Budd Co.,* the employer attempted to allocate the employees' vacation payments to the plant's shutdown period. Since vacation payment operates under certain conditions to reduce unemployment compensation pursuant to R.C. 4141.31(A)(5), the employees' claims for benefits were denied. The appellate court determined that the purported vacation payments were in fact bonuses and not within the purview of R.C. 4141.31. The court commented, "* * * [f]urther, the 'vacation payments' which appellants herein actually received were not related to an ascertainable week during which appellants lost wages. * * *" *Id.* at 277, 14 OBR at 307, 471 N.E. 2d at 159.

A similar lack of relation is patent in the case at bar. The parties stipulated during the hearing that the employer "lost all control" over the KEOGH funds on January 1, 1983, and that the funds were thereafter under the exclusive control of the claimant. Since the employer did not present the new offer to the claimant until January 25, 1983, we find no basis for allocating the monies to the subsequent period of unemployment. The fact that the employer did not transfer the KEOGH passbooks until February 28, 1983 is not material to the issue; the passbooks were mere memorializations of something the employer no longer owned.

Accordingly, the employer's second assignment of error is not well-taken. The decision of the court of common pleas is affirmed.

*Judgment affirmed.*

NAHRA, P.J., and DAVID T. MATIA, J., concur.