## ARTHUR H. MISHAW
*vs.*
## FAIRFIELD NEWS ET AL.

Superior Court      New Haven County      File No. 64686

MEMORANDUM FILED FEBRUARY 23, 1944.

*Arthur H. Mishaw,* appearing in person, for the Plaintiff.

*Harry Silverstone,* Assistant Attorney General, for the Defendant Administrator of the Unemployment Compensation Act.

O'SULLIVAN, J. This is an appeal by the Administrator of the Unemployment Compensation Act from a decision of the Unemployment Commissioner. It raises the question

whether the possession of a "statement of availability" required by the War Manpower Commission in its program of labor stabilization, is a condition precedent to eligibility for benefits under our Unemployment Compensation Act.

The facts are these: On April 12, 1943, Mishaw, a compositor of 30 years experience in the printing trade, was hired in that capacity by Fairfield News. Upon reporting for work he was assigned to tasks which for the most part were those of a porter and not of a compositor. Within a short time he terminated his employment and requested from his employer a "statement of availability" but his request was denied. A "statement of availability" is a certificate adopted by the War Manpower Commission "to promote the orderly transfer and movement of workers, to prevent pirating, undue migration, excessive turnover and absenteeism of workers and to insure the most effective utilization and mobilization of labor." It is a device initiated solely in the interest of national defense and the prosecution of the war and is predicated on Federal authority. It is defined as a written statement issued to an essential worker by his last employer to the effect that he is free to accept employment elsewhere in an essential activity. Without such a "statement of availability" other industries will not hire the worker until several weeks have elapsed following the severance of his relations with the prior employer. There is nothing in our own Act requiring the possession of any such "statement."

The Commissioner has found that Mishaw was justified in leaving the employ of Fairfield News because, among other things, of the character of the work he was required to perform, and that he was arbitrarily and unjustly refused the "statement of availability" he had sought. However, the Commissioner concluded that, though Mishaw was totally unemployed, and was physically and mentally able to work and ready and willing to accept any suitable job, he was not available for work, as required by the Act, in that he did not have a "statement of availability." His conclusion was that Mishaw was thus rendered ineligible for the immediate benefits of the Act. It is this conclusion that the Administrator claims is erroneous.

The qualifications for benefit eligibility are found in section 1339e (a) of the 1939 Supplement to the General Statutes. It is unnecessary to refer to them all because the Commissioner held that the only one which precluded Mishaw from receiving

benefits is that which requires him to be "available for work."

The Act incorporates no statutory definition of this phrase nor has one been formulated by any Connecticut court nor, so far as I can find, by that of any other state having comparable language in its unemployment compensation act. The dictionary defines "available" as "usable; capable of being used to accomplish a purpose", and if it is in this broad sense that the word is to be construed, Mishaw is not available for work. For, while he is available for work from his point of view, he is not available from that of would-be employers.

I cannot agree, however, that such a broad construction should be entertained. To do so would oppose the plain purpose of the Act and lead to results quite at odds with the manifest plan of the Legislature.

"The mischief which the act was designed to remedy was unemployment. . . . The provisions of the act disclose that pursuant to the plan effective under it, a fund is created by employers' involuntary contributions, out of which employees who lose their jobs may, after a waiting period, be paid benefits limited in amount and duration, while looking for work but unable to find it. . . . That the purpose of the act is remedial in character is clear. It is therefore to be construed liberally as regards beneficiaries, in order to accomplish its purpose." *Waterbury Savings Bank vs. Danaher,* 128 Conn. 78, 81.

The entire Act, in the light of the evil it attempts to ameliorate, indicates a legislative intent to establish a method of compensation for persons who are unemployed *through no fault of their own.* Passing by the arbitrary causes for disqualification as of no moment to this discussion, one finds that the section devoted to the qualifications required of a worker claiming eligibility for benefits, is expressed in language indicating that it is from the angle of the unemployed person that one must look to determine whether or not he is available for work.

Take an extreme case, although the instant one is extreme enough in that through the whim of Mishaw's last employer he is unjustly deprived of a "statement of availability" and thereby rendered unavailable for work in the broad meaning of that phrase. Assume that all employers in the State should enter into an agreement among themselves that no person who was wearing a bow tie would be hired. Although the example is ridiculous, the position of anyone claiming that a person

was not "available for work" because he wore a four-in-hand, would surpass the ridiculousness of the illustration.

Availability for work is to be decided upon what the claimant does and not upon the existence of regulations, foreign to the Act, which bar employers from hiring. And it makes no difference whether such regulations arise from agreements entered into by industry or imposed on it by Federal authority. In short, the test of a worker's availability is subjective. As long as no provision of the Act disqualifies him, he is entitled to its benefits, so far as the point under discussion is involved, when he has exposed himself unequivocally to the labor market.

The appeal is sustained and the matter is remanded to the Commissioner with instructions to award Mishaw the immediate benefits of the Act.