In the Matter of the Claim of JAMES BUS, Respondent. BETHLEHEM STEEL CORPORATION, Appellant; MARTIN P. CATHERWOOD, as Industrial Commissioner, Respondent.

Third Department, June 24, 1971.

*Phillips, Lytle, Hitchcock, Blaine & Huber* (*Francis V. Cole* and *John F. Donovan* of counsel), for appellant.

*McMahon & Crotty* (*Thomas P. McMahon* of counsel), for claimants-respondents.

*Louis J. Lefkowitz, Attorney-General* (*Irving Jorrisch, Samuel A. Hirshowitz* and *Samuel Stern* of counsel), for Industrial Commissioner, respondent.

HERLIHY, P. J.   This is an appeal by the employer from a decision of the Unemployment Insurance Appeal Board, filed January 7, 1971, which affirmed a Referee's decision sustaining initial determinations of the respondent Industrial Commissioner granting benefits to the claimant.

The Bethlehem Steel Company employed claimants in various positions and departments in its Lackawanna steel plant.   A lessening of the amount of work needed by the company resulted in a reduction of the working force and eventually resulted in claimants not being employed at Bethlehem.

Claimants contend that they had good cause to refuse the jobs offered to them by Bethlehem prior to being laid off.   This in turn depends on whether the board was correct in concluding that a job offer at a wage which would result in a reduction of earnings of 15% below the level of prior earnings was so substantial that claimants had good cause to refuse such employment.

Bethlehem's hiring policy is to start new employees at the lowest entry-level job in one of the plant's numerous departments.   As the employees acquire seniority, they fill jobs having higher classifications when such vacancies occur in their department.   If there is a reduction in the work force, progression would be downward.   Those with the most seniority would bump those in the department having less seniority.   In the event that there are no longer a sufficient number of jobs in a department for those employed, the employee who is no longer required in a department is given a " return notice " and sent to the employment office.   *If* work is still not available in any of the plant's departments the employee is laid off.   *If* work

is available in other departments, the employee is offered such work. Upon transfer to the new department, *if* the offer is accepted, the employee becomes the lowest person in terms of seniority and thus would have the least chance of progression to higher jobs in the new department. *However*, the employee would not lose his seniority in his old department and would be recalled to his original department when business improved.

Here, claimants had progressed in their departments to jobs which were rated above their entry-level job. As a result of reductions in the work force, claimants lost their jobs in their own departments but were offered jobs in other departments. Most of the jobs offered were as laborers in the coke oven and and structural shipping departments. The rate of pay for these jobs was $2.765 an hour. The claimants refused the jobs primarily because they felt that the reduction in pay was very great. Had the laborer jobs been in their own department claimants would have been compelled to accept them or been subject to discharge. As a result of refusing the jobs offered, claimants were laid off and filed for benefits.

After a hearing, the Referee affirmed the initial determinations granting claimants unemployment benefits. The Referee ruled that because a substantial reduction of earnings would result if the jobs offered were accepted, claimants' refusal was with good cause. In addition, the Referee, without specifying, determined that most of the claimants were suited to the offered employment by experience. The Unemployment Insurance Appeal Board following its own prior decisions and without passing on the issue of whether claimants were suited to the jobs offered, affirmed the Referee's decision on the ground that the jobs offered would have resulted in earnings substantially below that which they had been earning when laid off. The reduction, being at least 15% even under the "Earnings Protection Plan" negotiated by Bethlehem and the United Steel Workers of America, was substantial and claimants' refusal was therefore with good cause.

There is evidence in the record from which to conclude that there would have been at least a 15% reduction in wages from the jobs claimants held during the preceding 12 months. Thus, the board's finding in this regard should be affirmed (*Matter of Rumsey Mfg. Corp. [Corsi]*, 296 N. Y. 113; *Matter of Weber [Catherwood]*, 32 A D 2d 697). Similarly, the board's rejection of Bethlehem's contention that claimants would have received more than the base pay given to laborers as claimants gained seniority is also supported by the record. Claimants would

have been the lowest in seniority in their new departments and thus would have had the least opportunity to be assigned jobs with higher classifications. In addition, the labor force in the the higher classifications in the departments where the proposed assignments were to be made was stable and openings of a permanent nature were infrequent.

It is well established that the board is the final arbiter of factual issues and also that it is charged with the responsibility of interpreting the various provisions of the Labor Law relating to unemployment insurance (*Matter of Marsh* [*Catherwood*], 13 N Y 2d 235, 239).

The question for this court is whether or not there is a rational basis for the board's conclusion that an offer of employment at a wage substantially below that which the employees had been earning constituted good cause for refusal of the offer of employment. (See *Matter of Marsh* [*Catherwood*], *supra*, p. 240.)

" The Act [Unemployment Insurance Law] was designed to ' lighten [the] burden ' of ' involuntary unemployment ' which ' so often falls with crushing force upon the unemployed worker and his family '. (Labor Law, § 501.) ' The primary purpose of the law is to ease the hardship of involuntary unemployment due to economic conditions or other conditions beyond the control of the employee. It was not intended as a substitute for a minimum wage law. * * * It was not intended to regulate wages — it was intended as a substitute for the complete loss of wages forced upon an employee. (Labor Law, §§ 501, 522.)' (*Matter of Sellers* [*J. W. Mays, Inc.— Catherwood*], 13 A D 2d 204, 205–206.)'' (*Matter of Shanley* [*Catherwood*], 27 A D 2d 496, 499).

In the *Shanley* case (*supra*) this court reversed the board's interpretation of what constituted good cause for the refusal of employment pursuant to subdivision 2 of section 593 of the Labor Law.

The said subdivision 2 of section 593 contains four subparagraphs which specify what shall be deemed not to be without good cause and the fact that the wage offered is less than what the claimants had been previously earning is not mentioned therein. Since the sole ground or fact relied upon by the board for finding there was good cause for the refusal of employment is that the wages were substantially less than that which the employees had been earning in their capacity as skilled workers, the determination was erroneous as a matter of law. (See *Matter of Matyevich* [*Catherwood*], 15 A D 2d 387; cf. *Matter of Crowe* [*Corsi*], 280 App. Div. 427, affd. 305 N. Y. 699.)

To hold otherwise would mean that workers in this State would be subsidized by unemployment insurance benefits when by accepting work for which they are fitted by experience and training they could support themselves. Such a result would be contrary to the purposes of the Unemployment Insurance Law as set forth hereinabove (*Matter of Matyevich* [*Catherwood*], *supra*, 388–390). The result that workers must accept suitable employment or be disqualified from benefits does not prevent such workers from seeking higher paid positions while performing the new employment. The theory relied upon by the board in this case appears to be an application of the rationale applicable to situations involving " prevailing wage " rather than an application of the established basic rules governing what constitutes good cause for the refusal of an offer of otherwise suitable employment.

As noted hereinabove the board has not determined whether or not the jobs offered are those for which the claimants were fitted by training and experience. One cannot refuse suitable full-time employment for which he is equipped merely because a different type of employment is preferred (*Matter of Ranno* [*Catherwood*], 21 A D 2d 721). A percentage reduction in salary or wages cannot alone be controlling — " pragmatism " is a word of consequence in the field of Unemployment Insurance Law.

The decision appealed from should be reversed and matter remitted for further proceedings not inconsistent herewith, with costs to appellant against the Industrial Commissioner.

AULISI, GREENBLOTT, COOKE and SWEENEY, JJ., concur.

Decision reversed, and matter remitted for further proceedings not inconsistent herewith, with costs to appellant against the Industrial Commissioner.