Reading Company, Debtor, Appellant, *v.* Pennsylvania Public Utility Commission, Appellee, and Township of Swatara, Intervening Appellee.

Argued January 7, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., MENCER, ROGERS and BLATT. Judges KRAMER and WILKINSON, JR. did not participate.

*Joel E. Mazor,* for appellant.

*Edward Munce,* Counsel, with him *Philip H. Mann,* Assistant Counsel, for appellee.

*Christian V. Graf,* with him *James W. Reynolds,* and *Reynolds, Bihl, & Schaffner,* for intervening appellee.

OPINION BY JUDGE CRUMLISH, JR., March 6, 1975:

The instant appeal is from an order of the Pennsylvania Public Utility Commission, Appellee, (PUC), dated April 17, 1974, imposing on the Reading Company, Appellant herein, the sole cost of preparing and submitting to the PUC preliminary plans and cost estimates for construction of a pedestrian crossing on the 63rd Street bridge in Swatara Township, Intervening Appellee, (Township).

This Court is no stranger to the intricate litigation which has been generated by the 63rd Street bridge. In *Township of Swatara v. Pennsylvania Public Utility Commission,* 11 Pa. Commonwealth Ct. 196, 312 A. 2d 809 (1973), we were called upon to determine whether or not there was ample evidence to sustain a finding by the P.U.C. that the 63rd Street bridge did not carry a public highway. We there held that review of a 1953 proceeding in which it was alleged that Reading Company represented that the bridge carried a public road did not estop the contra contention in the later proceeding because the legal status of the bridge was not there in issue. Subsequent to our decision in that case, and following withdrawal of a petition for allocatur to the Supreme

Court, Township petitioned P.U.C. to reopen the proceeding for purposes of offering after-discovered evidence. P.U.C. permitted reopening and, following hearing and deliberation, issued the order which becomes the subject of this appeal.

Appellants pose three issues for our consideration:

1) Did the P.U.C. abuse its discretion in reopening the record and receiving evidence of a 1900 docket entry of the Court of Quarter Sessions of Dauphin County?

2) Is there a sufficient basis for declaring that the road is a public highway?; and

3) If this is a public highway, has it been abandoned as a public highway?

Turning first to the question of the P.U.C.'s order reopening the record, we find no error. In *City of Philadelphia v. Pennsylvania Public Utility Commission*, 185 Pa. Superior Ct. 598, 609, 138 A. 2d 698, 703-04 (1958), the Superior Court faced the issue of after-discovered evidence as a basis for reopening a P.U.C. record and wrote: "The petition [petition to reopen] alleged questions of law, for the most part, which are identical with those raised in the present appeal. The factual matters, alleged to have come to the attention of appellant since the final order, are not within the class of after discovered evidence which would justify the reopening of the proceeding. Evidence of all of the additional facts, referred to in the petition, was available at the time of the hearings in this case. But more important still, proof of the facts alleged would not change the result. As a general rule in matters before the Commission a petition for rehearing may be refused where it is not apparent that the evidence which the petition states would be offered was not available at the hearings in the proceeding. . . . The grant or refusal of a petition for a rehearing is a matter within the discretion of the Commission and the Commission's actions will not be reversed unless a clear abuse of discretion is shown. . . ." (Citations omitted.)

Appellants argue that since the 1900 docket entry was available at the time of the initial hearing in this proceeding, and could have been found by the exercise of reasonable diligence, no legal basis for reopening existed. We disagree. Here, the 1900 docket entry would unquestionably change the conclusion that the bridge was not a public road. The Superior Court did not hold that the introduction of after-discovered evidence is forever barred by the passage of time. Indeed we read that Court to say that a prime consideration of the test must be whether the outcome of the litigation might be different if that evidence is admitted into the record. Given the broad discretion of P.U.C. in its decision to grant or deny a rehearing, *City of Philadelphia v. Pennsylvania Public Utility Commission, supra; Pittsburgh Railways Co. v. Pennsylvania Public Utility Commission,* 180 Pa. Superior Ct. 201, 119 A. 2d 804 (1956) ; *Dillner Transfer Co. v. Pennsylvania Public Utility Commission,* 175 Pa. Superior Ct. 461, 107 A. 2d 159 (1954), we cannot say that discretion was abused by P.U.C. when it permitted the rehearing on the basis of this newly discovered evidence.

Appellant next contends that P.U.C. erred in finding the 63rd Street bridge to be a public highway. P.U.C.'s finding that "testimony of record and evidence introduced at that hearing convinces us that the proceedings at Dauphin County Road Docket "C", No. 5, 1900 were conducted in full conformity with all applicable statutory provisions and court decisions and we ... recognize the road as a lawful *public* road which the *public* has a right to have opened." (Emphasis in original.) The docket entry was competent evidence from which P.U.C. could find that the bridge is a public highway. This being so, P.U.C. must necessarily repudiate its initial finding. We will not disturb that decision.

Lastly, we reach the question of whether there has been an abandonment of the public highway. Appellant

argues that the failure of the Township to maintain the highway, albeit legally charted, amounts to abandonment because the Act of April 28, 1899, P.L. 104, §9, in effect in 1900 when the highway was laid, imposes a duty to maintain the highway "constantly . . . in repair at all seasons." This argument advances the contention that the Township has a two-fold evidentiary duty, i.e. 1) to prove that the highway was laid out; and 2) that it was constantly repaired. Absent both proofs it argues, legal abandonment cannot be seriously disputed.

In *Pittsburgh v. Epping-Carpenter Co.*, 194 Pa. 318, 323, 45 A. 129, 131 (1900), the Supreme Court affirmed on the lower court opinion which stated: "[i]n Pennsylvania a highway is the property of the people, not of a particular district, but of the whole state, who, as they do a legitimate sovereign, may dispute of it by their representatives and of their pleasure . . . [a] *municipality may be charged with the care of a public highway . . . but cannot dispose of it or relinquish the rights of the public unless* specifically authorized by the legislature to do so." (Citations omitted.) (Emphasis added.) We have searched in vain to find authority for Reading's position. Decisional and statutory law on the subject of abandonment and vacation of the public use is voluminous, but nowhere have we found support for the proposition that failure to maintain alone constitutes abandonment.

Consistent with the foregoing, we affirm the order of the P.U.C.