603 P.2d 981

**Dorothy Ann GUILLARD,**
**Claimant-Appellant,**

v.

**DEPARTMENT OF EMPLOYMENT,**
Defendant-Respondent.

No. 12695.

Supreme Court of Idaho.

Nov. 28, 1979.

Paul L. Westberg, Boise, for claimant-appellant.

David H. Leroy, Atty. Gen., R. LaVar Marsh, Roger B. Madsen, Donald L. Harris, Deputy Attys. Gen., Boise, for defendant-respondent.

BAKES, Justice.

The appellant Guillard, became unemployed on October 5, 1976, when her employer closed down its Emmett plant. At that time Guillard had over 14 years of experience in cost accounting and general business; she was then earning $4.25 an hour. Guillard promptly applied for unemployment insurance benefits. She was found qualified and received benefits until she was determined to be ineligible by a claims examiner for the Department of Employment, effective February 6, 1977, on the basis that she had failed to accept suitable

work, be available for work, or to seek work.

Guillard appealed these determinations and a hearing was held. The appeals examiner for the Department reversed that portion of the earlier decision by the claims examiner that Guillard had refused suitable work. He affirmed the decision that she was not available for work or seeking work, doing so on the basis that Guillard was only seeking jobs in the the fields of accounting or general business and was confining her search to jobs in the Emmett area which paid at least $4.25 an hour. Guillard gave family responsibilities and added travel expense as reasons for so limiting her job search. During this time, Guillard had found and accepted two part time jobs in the Emmett area paying hourly rates of $4.25 and $4.95.

Guillard sought review by the Industrial Commission and another hearing was held before a referee. The Commission adopted the findings of the referee, concluding that Guillard, by restricting her search to positions in the accounting-clerical field paying at least $4.00 per hour in the Emmett area had "effectively and substantially reduced her likelihood for employment and, by such restrictions, claimant [was] not 'available' for work within the meaning of the Employment Security Law." I.C. § 72–1366(d). Guillard then appealed to this Court.

Approximately one month after the Commission's decision, Guillard found and accepted an accounting job in the Emmett area which paid $3.88 per hour.

Appellant raises two issues on appeal. The first issue deals with the procedural administration of the Employment Security Law, and the second issue concerns the merits of the controversy.

I

Appellant first maintains that the provisions of the Idaho Administrative Procedure Act regarding evidentiary rules in contested cases are applicable to hearings before the Department of Employment and the Industrial Commission.[1] Because of this, appellant argues, the appeals examiner and the Commission erred in admitting certain exhibits without requiring the Department to properly identify, lay a foundation for, show the relevancy of, and offer with an opportunity to object to, each and all of the exhibits offered as evidence.

Before we embark on an extended and undoubtedly unnecessary discussion regarding the applicability of the Administrative Procedure Act to unemployment compensation proceedings, we note that traditionally this Court has not required the Industrial Commission to adhere to strict rules of procedure and evidence in its hearings. *Hagadone v. Kirkpatrick*, 66 Idaho 55, 154 P.2d 181 (1944); *Thom v. Callahan*, 97 Idaho 151, 540 P.2d 1330 (1975). In *Thom*, a workmen's compensation case, we stated:

> "[T]his Court has recently made clear the emerging trend in our case law freeing the Industrial Commission from a strict observance of rules of evidence as govern courts of law. We have held that in those areas where the Commission possesses particular expertise, it has the discretionary power to consider reliable, trustworthy evidence having probative value in reaching its decisions, . . . even if such evidence would not be ordinarily admissible in a court of law." 97 Idaho at 154, 540 P.2d at 1333.

The *Thom* case was decided long after the passage of the Administrative Procedure

---

1. The Idaho Administrative Procedure Act is compiled in I.C. § 67–5201 *et seq.* I.C. § 67–5201 provides in part:

   "67–5201. DEFINITIONS.—As used in this act:
   "(1) 'agency' means each state board, commission, department or officer authorized by law to make rules or to determine contested cases, except those in the legislative or judicial branch, the state militia and the state board of corrections;

   "(2) 'contested case' means a proceeding, including but not restricted to ratemaking and licensing, in which the legal rights, duties, or privileges of a party are required by law to be determined by an agency after an opportunity for hearing;
   . . . ."

   Rules of procedure and evidence in contested cases are set forth in I.C. §§ 67–5209 and –5210, respectively.

Act,[2] although the Court did not discuss its applicability at that time. Ironically, this more liberal approach to evidentiary rules in administrative cases is supported by the very APA section upon which appellant so heavily relies. I.C. § 67–5210 reads in pertinent part:

"67–5210. RULES OF EVIDENCE—OFFICIAL NOTICE.—In contested cases:

"(1) irrelevant, immaterial, or unduly repetitious evidence shall be excluded. The rules of evidence as applied in non-jury civil cases in the district courts of this state shall be followed. *When necessary to ascertain facts not reasonably susceptible of proof under those rules, evidence not admissible thereunder may be admitted, except where precluded by statute, if it is of a type commonly relied upon by reasonably prudent men in the conduct of their affairs.* . . ." (Emphasis added).

The above language on its face eschews any notions of strict evidentiary criteria.

The above quoted section has an interesting history. The 1961 Revised Model State Administrative Procedure Act proposed only that the rules of evidence applicable in non-jury civil cases should be followed in state agency contested cases.[3] Idaho does not have a distinctly identifiable body of evidentiary rules applicable only in non-jury civil cases. Apparently, few, if any, other jurisdictions have any such rules, and thus most state legislators declined to adopt the standard set forth in the model act. Gellhorn, Rules of Evidence & Official Notice in Formal Administrative Hearings, 1971 Duke L.J. 1, 12. The 1970 version of the model state act continued to propose this possibly non-existent standard, but added the emphasized sentence in the above quoted Idaho statute.[4] Such a change evinces an intent on the part of the drafters of the model act and the Idaho legislature to liberalize technical rules of admissibility in administrative adjudications.

Although Idaho has no discernible evidentiary rules applicable in non-jury civil cases, it is clear that the rules in non-jury cases regarding admission of evidence are more liberal than in jury cases. G. Bell, Handbook of Evidence for the Idaho Lawyer 14 (1972). For example, this Court will not reverse a trial court in a non-jury case on the basis of an erroneous admission of evidence unless it appears that the opposing party was misled or surprised in a substantial part of its case, or that the trial court materially relied on the erroneously admitted evidence. *Duthweiler v. Hansen*, 54 Idaho 46, 28 P.2d 210 (1933). In trials before the court, it is presumed that the trial court did not consider incompetent or inadmissible evidence in making its findings. *Isaacson v. Obendorf*, 99 Idaho 304, 581 P.2d 350 (1978); *Shrum v. Wakimoto*, 70 Idaho 252, 215 P.2d 991 (1950). Therefore, even if the above APA provision was applicable to hearings involving the Department of Employment, the administrative tribunal would not be required to strictly adhere to formal and technical rules of evidence.

However, we need not decide this case on the basis of the applicability of the above quoted provision of the Administrative Procedure Act regarding evidentiary rules in contested cases, or on the subtle distinctions between evidentiary rules in jury and non-jury civil trials, or on the general historical informality of proceedings before the Industrial Commission. Unemployment compensation procedures are governed by I.C. § 72–1368. That section was passed long before the passage of the Administrative Procedure Act and has been amended since such time without substantial change to the portion of the statute in question. Idaho Code § 72–1368 specifically delineates departmental procedure. A specific statute controls over a more general statute when there is any conflict. *Swisher*

---

**2.** The Idaho Administrative Procedure Act was passed in 1965.

**3.** Revised Model State Administrative Procedure Act § 10(1) (1961).

**4.** Revised Model State Administrative Procedure Act § 10(1) (1970).

*v. State Department of Environmental and Community Services,* 98 Idaho 565, 569 P.2d 910 (1977).

▉ The claimant did not object when the exhibits in question were introduced into the record by the appeals examiner. Thereafter, the referee and the Industrial Commission were required by I.C. § 72–1368(g) to include such exhibits as part of the record of the proceedings before the Commission. "The record of the proceedings before the appeals examiner shall become part of the record of the proceedings on a claim for review before the board with respect to the evidence admitted into testimony received before the appeals examiner, . . . ." I.C. § 72–1368(g). Since the provision of the Employment Security Act is specific and not found in the APA, it is controlling. The Commission did not err in including the exhibits in the record in the first instance.

▉ Subsequent to the decision of the Industrial Commission, appellant moved to strike any and all reference to exhibits 1 through 13 on essentially the same grounds as are raised on appeal. In denying the motion, the Commission stated:

"That though the Appeals Examiner failed to properly individually identify and offer the exhibits and though there may not be strict adherence to the Administrative Procedures Act and the Department's own rules, there is no surprise. The claimant was put on notice that these documents were made exhibits and were in fact part of the record before the Appeals Examiner and she was made aware that these documents were to be considered by the Finder of Fact."

We agree with the Commission's decision. The appellant has failed to show that she was prejudiced by the admission of the exhibits in question. There is absolutely no indication that the appeals examiner or the Industrial Commission relied to any extent on the exhibits. To the contrary, it appears that the Commission relied exclusively on the claimant's statements made at the hearings on the record.[5] Moreover, the exhibits in question consist of forms and documents routinely found in a claimant's administrative file. The exhibits include a claim for benefits, a determination of eligibility, summary of interviews, determinations, a request for redetermination, a notice of hearing, and other documents relating to the history of claimant's dealings with the Department of Employment. As such the exhibits are much more akin to pleadings than to evidentiary documents. These types of documents provide necessary procedural background information to appeals examiners in furtherance of efficient administration of unemployment compensation appeals.

▉ The appellant bears the burden of showing prejudicial error on appeal. *Rogers v. Trim House,* 99 Idaho 746, 588 P.2d 945 (1979). *See Hudson v. Hecla Mining Co.,* 86 Idaho 447, 387 P.2d 893 (1963); *Norman v. Employment Security Agency,* 83 Idaho 1, 356 P.2d 913 (1960). In support of her allegation of prejudice, appellant points to the fact that she was disallowed benefits when she allegedly should have been found eligible. If an error could be shown to be prejudicial merely on the basis of adverse result, the concept of harmless error would disappear from appellate review. Appellant also argues that the appeals examiner failed to follow departmental rules and regulations in admitting the exhibits in question. In view of our conclusion that such an error, if any, was harmless and not prejudicial, it is unnecessary to discuss this question. Similarly, appellant's contention that the record fails to disclose whether the appeals examiner considered any state memoranda or data is without merit. *See* I.C. § 67–5209(e)(7). Appellant has failed

---

5. In one instance, where there was a conflict between the exhibits and the testimony given by appellant, the Commission apparently resolved the conflict in appellant's favor. In a summary of an interview dated February 14, 1977, and apparently signed by appellant, she states that she will not accept a position at an hourly wage of less than $4.25. She subsequently testified that $4.00 per hour was the lower limit. The Commission, in its findings, accepted the lower figure.

to show whether any such material even exists; certainly, she has failed to show prejudicial error.

## II

Appellant next complains that the Industrial Commission erred in concluding that appellant's self imposed restrictions on her job-seeking efforts rendered her unavailable for suitable work within the meaning of I.C. § 72–1366(d).

This Court has consistently held that "[t]o meet the availability requirements of the statute, the claimant must show that he is able, ready, and willing to accept, and is seeking, suitable work at a point where an available labor market exists." *Ellis v. Employment Security Agency*, 83 Idaho 95, 98, 358 P.2d 396, 397 (1961). *Accord, Eytchison v. Employment Security Agency*, 77 Idaho 448, 294 P.2d 593 (1956); *Claim of Sapp*, 75 Idaho 65, 266 P.2d 1027 (1954). Similarly, "[a]vailability for work requires no more than availability for suitable work which the claimant has no good cause for refusing." *Johnson v. Employment Security Agency*, 81 Idaho 560, 563, 347 P.2d 764, 766 (1959).

However, "[a] claimant may render himself unavailable for work by imposing conditions and limitations as to employment, so as to bar his recovery of unemployment compensation, since a willingness to be employed conditionally does not necessarily meet the test of availability." *Ellis v. Employment Security Agency*, 83 Idaho at 99, 358 P.2d at 397–98.

The Employment Security Law provides guidance in determining whether a claimant is available for suitable work.

"72–1366. PERSONAL ELIGIBILITY CONDITIONS.—

"(g) In determining for the purposes of this act, whether or not work is suitable for an individual, the degree of risk involved to his health, safety, morals, his physical fitness, experience, training, past earnings, length of unemployment and prospects for obtaining local employment in his customary occupation, the distance of the work from his residence, and other pertinent factors shall be considered. No employment shall, in any event, be deemed suitable and benefits shall not be denied to any otherwise eligible individual for refusing to accept new work or to hold himself available for work under any of the following conditions:

. . . . .

"(2) If the wages, hours, or other conditions of work offered are substantially less favorable to the individual than those prevailing for similar work in the locality of the work offered; . . ."

The Commission's decision adequately took the above factors into account. First, the Commission properly considered the length of time during which claimant had been unemployed. As of the time of the Commission's decision, appellant had been out of work for eight months. A claimant may be required to lower his sights in his efforts to seek employment as the period of unemployment increases. *See* Annot., 97 A.L.R.2d 1125, 1133 (1964). The consideration of this factor cuts both ways, of course. "Work which may be deemed 'unsuitable' at the inception of claimant's unemployment, and for a reasonable time thereafter, because it pays less than his prior earning capacity, may thereafter become 'suitable' work when consideration is given to the length of unemployment and the prospects for obtaining customary work at his prior earning capacity." *Bayly Mfg. Co. v. Department of Employment*, 155 Colo. 433, 395 P.2d 216, 220 (1964). Therefore, a claimant must expand the scope of his search as time goes by.

The second factor which the Commission considered was the appellant's self imposed limitation on the acceptability of earnings. Appellate courts have frequently confronted the issue of whether offered wages are "substantially less favorable" than prior earnings, I.C. § 72–1366(g)(2), to the extent that offered work is rendered unsuitable to the individual claimant. *Cf. Hagadone v. Kirkpatrick*, 66 Idaho 55, 154 P.2d 181 (1944) (agency decision that claimant was unavailable for work based on his rejection

of two positions with an attendant decrease in pay of well over 50% reversed and remanded for reconsideration); *Scott v. Photo Center, Inc.*, 306 Minn. 535, 235 N.W.2d 616 (1975) (25% reduction in pay constitutes good cause for quitting employment); *Johns-Manville Prod. Corp. v. Board of Review*, 122 N.J.Super. 366, 300 A.2d 572 (1973) (25% reduction in wages held to be "substantial" and therefore good cause for quitting); *Green v. Republic Steel Corp.*, 37 N.Y.2d 554, 376 N.Y.S.2d 75, 338 N.E.2d 594 (1975) (offer of work at less skilled job at 15% reduction in pay held unsuitable); *Bus v. Bethlehem Steel Corp.*, 37 A.D.2d 98, 322 N.Y.S.2d 310, *aff'd*, 32 N.Y.2d 955, 347 N.Y.S.2d 206, 300 N.E.2d 736 (1973) (15% reduction in pay did not, by itself, render offered work unsuitable); *Pennington v. Dudley*, 10 Ohio St.2d 90, 226 N.E.2d 738 (1967) (15% reduction in pay for offered work does not require conclusion, as a matter of law, that offered work was unsuitable); *Shay v. Unemployment Compensation Board of Review*, 424 Pa. 287, 227 A.2d 174 (1967) (30% reduction in pay was substantial and rendered offered work unsuitable); *Unemployment Compensation Board of Review v. W. R. Grace Co.*, 23 Pa.Cmwlth. 237, 351 A.2d 297 (1976) (reduction in hourly wage from $4.25 to $3.85 does not render offered employment unsuitable); *Donnelly v. Commonwealth, Unemployment Compensation Board of Review*, 17 Pa.Cmwlth. 548, 330 A.2d 544 (1975) (reduction in pay of over 20% for offered work held to be suitable after three and a half month period of unemployment); *In re Potvin*, 132 Vt. 14, 313 A.2d 25 (1973) (offered work requiring less skill at 40% reduction in pay held unsuitable even after seven month unemployment period). Clearly, we cannot state that a given percentage reduction in pay would or would not render prospective employment unsuitable. The administrative tribunal must consider any wage restriction set by the claimant along with all the other factors relevant to the issue of availability for suitable work. We merely note that Guillard would not accept a reduction in pay in excess of 6% of her prior earnings. After a lengthy period of unemployment, the Commission was entitled to conclude that such a self imposed restriction operated in favor of ineligibility. It should also be noted that appellant did obtain employment at an hourly wage of $3.88 soon after the Commission's decision.

▓▓▓▓ The third factor upon which the Commission relied was appellant's refusal to expand the scope of her job search outside of the Emmett area. The record does not indicate the extent and nature of the labor market in Emmett. One logical inference after eight months of unemployment is that the Emmett labor market was insufficient to support appellant's job search with its self imposed limitations. At any rate, the burden of establishing eligibility for unemployment compensation benefits is on the claimant whenever the claim is questioned.[6] *E. g.*, *Rogers v. Trim House*, 99 Idaho 746, 588 P.2d 945 (1979); *Pyeatt v. Idaho State University*, 98 Idaho 424, 565 P.2d 1381 (1977); *Flynn v. Amfac Foods, Inc.*, 97 Idaho 768, 554 P.2d 946 (1976). The claimant must show that in spite of her restrictions she remained attached to the labor market. Although in some circumstances the distance from residence to job market might support such a limitation, *see Johnson v. Employment Security Agency*, 81 Idaho 560, 347 P.2d 764 (1959), this is not true when the geographical restriction is accompanied by the other restrictions present here. *Johnson* dealt with the claim of a 68 year old Coeur d'Alene man who had turned down a job in Spokane, Washington. The offered work was not only 34 miles away, but also required an 11-hour day and was so physically demanding that

---

**6.** During oral argument, there was some discussion regarding whether the Court should carve out an exception to this long established allocation of burden of proof. It was the first time the question was raised. We have consistently held that we will not consider new grounds for reversal raised for the first time on appeal. *Unigard Ins. Group v. Royal Globe Ins. Co.*, 100 Idaho 123, 594 P.2d 633 (1979); *Local 1494, Int'l Ass'n of Firefighters v. City of Coeur d'Alene*, 99 Idaho 630, 586 P.2d 1346 (1978); *Clark v. Int'l Harvester Co.*, 99 Idaho 326, 581 P.2d 784 (1978); *Dunn v. Baugh*, 95 Idaho 236, 506 P.2d 463 (1973).

the employer's foreman had told the claimant that he didn't think the claimant could handle it. *Johnson* is therefore distinguishable.

■ We find it unnecessary to state whether any one of the above factors considered by the Commission would by itself suffice to render a claimant ineligible for unemployment compensation. We conclude only that the Industrial Commission was entitled to consider the above factors and properly did so. In our opinion, the facts afford ample basis for the Commission's determination. They do not, as Guillard contends, establish as a matter of law that in spite of her self imposed restrictions, appellant nonetheless remained available for suitable work. We are constitutionally compelled to defer to the findings of the Industrial Commission when supported by substantial and competent evidence. Idaho Const. art. 5, § 9; *Simmons v. Department of Employment*, 99 Idaho 290, 581 P.2d 336 (1978); *Booth v. City of Burley*, 99 Idaho 229, 580 P.2d 75 (1978).

The decision of the Industrial Commission is hereby affirmed.

DONALDSON, C. J., SHEPARD, J., and SCOGGIN, J. Pro Tem., concur.

BISTLINE, Justice, dissenting.

The Court's statement of the factual background finds me in ready agreement, but as to the balance of the opinion, I respectfully dissent, suggesting that the reader will readily see from the history that Mrs. Guillard was entirely correct in her belief that she should and would find work at Emmett at a pay scale commensurate with what she had been receiving when her steady employer closed down its Emmett plant.[1]

I will endeavor to point out that both law and precedent are on the side of Mrs. Guillard, who above all on the record presented does not come across at all as a kennel-dog (Harry S. Truman, 1947) waiting for free meals.

The Court's opinion makes no mention of the Commission's unique conclusion that Mrs. Guillard rendered herself ineligible for benefits because she had *"constructively"* failed to be available for suitable work, the use of which word appeared to me to be of such significance that it was given some prominence in my own draft of the history of Mrs. Guillard's claim.

In my view, and as I earlier stated it, we must decide as a matter of law whether the evidence substantiates the Commission's legal conclusion that Mrs. Guillard had rendered herself ineligible for unemployment insurance benefits because she had *"constructively"* failed to be available for suitable work. Where Mrs. Guillard had initially been found qualified for benefits, I considered that our concern was also with allocation of the burden of proof where the Department sought to take away her entitlement.

Only when the Court's opinion progresses to Part II does the Court begin a discussion of the only real issue in the case, *i. e.*, whether as a matter of law the evidence substantiates the Commission's conclusions.[2]

*Constructive failure of availability for suitable work* is, of course, before the Court as a matter of first impression, having heretofore found no place in the Court's decision law, and not being any language found in the Employment Security Law. The Court

1. Mrs. Guillard on her own volition found and accepted work paying $3.88 per hour. She had felt that work for which she was suitable should pay her $4.00 per hour. To my mind the 12 cent differential is too minimal to support a decision suggesting that she had set her sight too high.

2. I am in total agreement that the discussion of the applicability of the A.P.A. to unemployment compensation proceedings is both extended and unnecessary. Only in proceedings in this

Court did Mrs. Guillard have legal representation, having "gone it alone" throughout the Department hearings and in Industrial Commission proceedings, in which latter hearing no inquiry was made by the referee as to whether she had considered the advisability of going unrepresented into an adversary hearing. As would be expected, she voiced no objection to anything, and that should have been the beginning and end of Part I of the Court's opinion.

may have wisely chosen to avoid any discussion of the term, but can it properly do so in disposing of the appeal? I think not.

Conclusion I of the Commission's final determination states the language which is found in the statutory law:

"'The personal eligibility conditions of a benefit claimant are that—(d) During the whole of any week with respect to which he claims benefits * * * he was able to work, available for suitable work, and seeking work; * * *.'" Idaho Code § 72–1366.

The facts as found and stated by Mr. Sheils, referee for the Commission, and approved and adopted by the Commissioners, in my opinion, clearly establish that absent any present discussion of "constructive failure," Mrs. Guillard had not rendered herself ineligible. Those facts are:

"Claimant has over fourteen years experience in the banking and cost accounting fields. At the time of her lay-off claimant was earning $4.25 per hour working for Adco West in their cost accounting department. Claimant testified, and the Referee finds, no job will be acceptable to her which pays her less than $4.00 per hour. Claimant is mainly interested in work involving accounting. Claimant has two children, ages thirteen and nine. Because of these children she has declined to work out of the Emmett area. Claimant has been unemployed since October 5, 1976, except for three weekends in late April and early May, 1977, when she worked at the Emmett Racetrack, receiving $4.95 per hour. Also, beginning May 27, 1977, claimant worked for the Timber Inn in Emmett as an accountant-clerk, approximately four to eight hours a week, earning $4.25 per hour. Claimant has applied at several establishments seeking work in the accounting field. Once a week she checks with the Department of Employment for similar accounting-type work and has several leads, but the only prospective jobs are not available at the present time."

Returning to the Commission's interjection of "constructively" into its determination, I, for one, have no problem. The record is crystal clear that she knew her capabilities, knew what pay she should command, knew that work would come, and like the good bird dog, "applied at several establishments seeking work in the accounting field," also checking weekly with the Department. In short order her efforts produced a position which paid her $3.88 an hour. In order to get benefits from the Department, should she have sought employment at lesser jobs and lesser pay in and around Boise? If she settled for a poor job with less pay, involving both commuting and babysitting, obviously she was not in a good position to continue her search for the kind of employment which she had had. Or, alternatively, does the law require her to abandon Emmett in favor of a large metropolitan area? I think not.

Having some idea as to what is meant by "constructive fraud," I would suppose that the Commission by "constructive failure" intended a meaning that while Mrs. Guillard did everything right, and meant to comply with the law, and was extremely desirous of returning to work and supporting her two children, she held too good an opinion of herself, and should have realized that she had to lower her sights, had to find work in Boise, had to burn up petrol, had to hire babysitters, had to commute twice a day over Freeze-Out Hill, come summer, come winter. I disagree, and thought the matter was put to rest by this Court's recent holding in *Meyer v. Skyline Mobile Homes*, 99 Idaho 754, 589 P.2d 89 (1979), and the earlier and age-venerated opinion of the Court in *Johnson v. Employment Security Agency*, 81 Idaho 560, 347 P.2d 764 (1959).

Frankly, I am at a loss to understand the Court's attempt to distinguish *Johnson* for Mrs. Guillard's case. Perhaps this is because of prior opportunities to drive from Spokane, Washington, to Coeur d'Alene, Idaho as well to traverse the road from the Boise area to Emmett. If anything, Mrs. Guillard would have a harder drive, and would spend considerably more for gasoline,

although the time commuting might be about the same. I am completely unable to understand how the Commission in the first place, and then the Court, can ignore her responsibilities to care for two children. Unlike the other members of the Court, I do not in the least find it just or proper to speak in terms of Mrs. Guillard's "self imposed restrictions," implying that the same were not genuine or reasonable. As was brought out at oral argument, the Department placed nothing whatever in the record to show that there was suitable employment for Mrs. Guillard at Boise, at Meridian, or at Eagle, or anywhere. Yet it, not she, had the resources and knowledge to have done so. Asked if it would be too far to expect her to commute to Mountain Home, my recollection is that there was no answer, leaving wonderment as to just how far is "too far" so as to make it unreasonable to insist that a claimant extend her search area.

Turning to the burden of proof issue, the Court should be much persuaded, but is not, by a recent decision from California. In *Sanchez v. Unemployment Insurance Appeals Board*, 20 Cal.3d 55, 141 Cal.Rptr. 146, 569 P.2d 740 (1977) the claimant, Sanchez, was ruled ineligible for unemployment insurance benefits for rejecting weekend work because she had to care for her four year old son. During the previous nine years she had worked as a waitress and in a factory.

The Department concluded that Sanchez was not "able to work and available for work" in that her self-imposed exclusion from weekend employment eliminated a "major portion of her labor market."

At a subsequent hearing, aside from the claimant's testimony, no evidence was received concerning the size of the potential market for waitress labor within claimant's time restrictions nor as to the potential market for factory work.

The language of that court is highly persuasive, and I commend it to my brethren:

"We are satisfied here that the second step of the determination of availability —i. e., whether the claimant has made himself available to a 'substantial field of employment'—calls for testimony regarding the size and character of the labor market which is 'peculiarly within the knowledge and competence' of the department. The average unemployed claimant with obviously limited resources cannot be expected to provide evidence which may be relatively complicated, expert, or difficult to obtain regarding local and area economic conditions. Nor would it be efficient to require the presentation of such data in every case on an issue which might be the subject of dispute in but a few.

"Accordingly, once a claimant has shown he is available for suitable work which he has no good cause for refusing, the burden of proof on the issue of whether he is available to a 'substantial field of employment' lies with the department. If the department believes that a given claimant, despite his availability for such suitable work, is nevertheless not attached to a labor market of sufficient dimension, it may be expected to explain its position and support it with appropriate evidence." (Citation omitted)

141 Cal.Rptr. at 156–157, 569 P.2d at 750–51.

A holding that the Department has the burden of proof in this situation would be consistent with our recent case of *Tappen v. State, Department of Health and Welfare*, 98 Idaho 576, 570 P.2d 28 (1977). There we held that the Department of Health and Welfare had the burden of proof where they declared ineligible a claimant who had been receiving Aid to Dependent Children payments.

This Court has held in regard to availability that the general requirements of the statute are met when the worker is able, ready and willing to accept, and is seeking suitable work at a point where an available labor market exists. *Claim of Sapp*, 75 Idaho 65, 266 P.2d 1027 (1954).

As pointed out in *Parsons v. Employment Security Commission*, 71 N.M. 405, 379 P.2d 57, 60 (1963):

" ' "A labor market for an individual exists when there is a market for the type of services which he offers in the geographical area in which he offers them. 'Market' in this sense does not mean that job vacancies must exist; the purpose of unemployment compensation is to compensate for the lack of appropriate job vacancies. It means only that the type of services which an individual is offering is generally performed in the geographical area in which he is offering them." Freeman, 55 Yale L.J. 123, 124. "In short, the test of a worker's availability is subjective. As long as no provision of the Act disqualifies him, he is entitled to its benefits * * * when he has exposed himself unequivocally to the labor market." *Mishaw v. Fairfield News*, 12 Conn.Sup. 318, 321.' "

*Accord, In re Barcomb*, 132 Vt. 225, 315 A.2d 476 (1974). This Court has consistently held that "[a]vailability for work requires no more than availability for suitable work which the claimant has no good cause for refusing." *Johnson v. Employment Security Agency*, 81 Idaho 560, 563, 347 P.2d 764, 766 (1959); *Eytchison v. Employment Security Agency*, 77 Idaho 448, 294 P.2d 593 (1956); *Hagadone v. Kirkpatrick*, 66 Idaho 55, 154 P.2d 181 (1944).

Suitable employment means work in the individual's usual occupation or for which he is reasonably fitted. *Loew's Inc. v. California Employment Stabilization Commission*, 76 Cal.App.2d 231, 172 P.2d 938 (1946).

In *Sanchez, supra*, the court said:

"However, the availability requirement is not satisfied merely by a willingness to accept all such 'nonrefusable' work. The purpose of the requirement has frequently been described as a way of assuring that a claimant is 'attached to the labor market.' The description is hardly transparent, but it is helpful because it implies that 'availability' makes some reference to the functions and needs of the economy as well as to the requirements of a particular worker. One consequence of this policy is that availability normally entails accessibility to work for which there is some social demand. Thus, a second element of the inquiry into availability consists of the determination whether, after a claimant has restricted his market to 'suitable work which he has no good cause for refusing,' he remains available for work for which there is a substantial field of potential employers." (Citations omitted)

141 Cal.Rptr. at 152–153, 569 P.2d at 746–47.

Mrs. Guillard's availability for work in the Emmett area is beyond dispute. The underlying issue then is whether there is sufficient evidence, whether or not provided by the Department—although it should seek to sustain the burden—before the Commission to justify a finding that her decision to restrict her area of employment to Emmett made her unavailable for work. The Commission's findings do not support its conclusion.

I.C. § 72–1366 in pertinent part, says: "[i]n determining for the purposes of this act, whether or not work is suitable for an individual, the degree of risk involved to his health, safety, morals, his physical fitness, *experience*, training, past earnings, length of unemployment and prospects for obtaining local employment in his customary occupation, the distance of the work from his residence, *and other pertinent factors shall be considered."* (Emphasis added)

The court in *Sanchez, supra*, said:

"We conclude that a claimant who is parent or guardian of a minor has 'good cause' for refusing employment which conflicts with parental activities reasonably necessary for the care or education of the minor if there exist no reasonable alternative means of discharging those responsibilities. *Indeed, 'It is difficult to imagine a better cause for rejection of employment . . .' "* (Citations omitted) (Emphasis added)

141 Cal.Rptr. at 156, 569 P.2d at 750.

This Court has recognized the fact that a claimant for unemployment is not obligated to travel great distances from his home in

order to satisfy the requirement that he actively be seeking work. *Hudson v. Hecla Mining Company*, 86 Idaho 447, 387 P.2d 893 (1963); *Johnson v. Employment Security Agency*, 81 Idaho 560, 347 P.2d 764 (1959).

In *Meyer v. Skyline Mobile Homes*, 99 Idaho 754, 589 P.2d 89 (1979), the claimant's contention was that the commission failed to give adequate consideration to the distance from his residence to the work offered and the risk that extended travel periods would have on his marriage and his ability to care for his children. This Court agreed and said:

> "However, absent from the commission's suitability analysis is consideration of the distance between Meyer's residence and the work Skyline offered. Although the role of distance ordinarily becomes an issue where employees commute on their own time and at their own expense between their homes and fixed work places, nothing in I.C. § 72–1366(g) confines consideration of the distance factor to the commuter context. (Citation omitted) We hold that distance must be considered in assessing the suitability of jobs which, by their nature, require traveling. If a reasonable person in Meyer's position who truly desired to work would have considered the Skyline offer unacceptable, the Skyline offer would not have been an offer of suitable employment. It will be necessary for the commission to reconsider the suitability issue in this light." *Id.* at 758, 589 P.2d at 93.

Whether it was or was not the obligation of the Department to sustain the burden of presenting sufficient evidence showing that Guillard had effectively removed herself from the labor market, the evidence does not sustain the Commission's conclusion, or this Court's affirmance. It is interesting to speculate as to the nature and quality of evidence Mrs. Guillard should have presented in order to derail the Commission's view that she was constructively failing to be available. Mrs. Guillard, whether she knew it or not, was fighting the phantom of unknown standards. See *Tuma v. Board of*

*Nursing of the State of Idaho*, 100 Idaho 74, 593 P.2d 711.

The decision of the Commission should be reversed with directions that Guillard be awarded benefits which may have accrued to her from the time she was erroneously ruled ineligible until she regained employment.