Young Jou JEUN, Petitioner-Appellant,

v.

IOWA DEPARTMENT OF JOB SERVICE, Respondent-Appellee.

No. 86–294.

Court of Appeals of Iowa.

June 24, 1987.

Linda S. Pettit of Pettit & Mann, Des Moines, for petitioner-appellant.

Walter F. Maley and Joseph L. Bervid of Iowa Dept. of Job Service for respondent-appellee.

Considered by OXBERGER, C.J., and DONIELSON and SNELL, JJ.

OXBERGER, Chief Judge.

In this appeal, petitioner Young Jou Jeun challenges the district court's order affirming a decision entered by the Iowa Department of Job Service which disqualified him from further benefits and assessed an overpayment against him in the amount of $4,649.33. Jeun has raised two issues for appellate consideration. First, he contends that the department's finding that he was not in fact available for employment or totally unemployed during the time that he received compensation is not supported by the evidence in the record. In addition, Jeun argues that the department erroneously required him to prove that he was available for employment during this time. For the reasons that follow, we affirm.

Before addressing the above assignments of error, we find it necessary to set forth the following salient facts. In March of 1983, the petitioner was laid off from his employment as an instructor of Tae Kwon Do at Kim's Academy. He then filed an application for unemployment benefits with the Iowa Department of Job Service and began receiving compensation March 6, 1983. Jeun continued to list Kim's Acade-

my as his last and only employer, and received unemployment benefits until they were exhausted in November of 1983.

In March of 1984, Jeun filed a renewed claim for benefits again using Kim's Academy as his last employer. His request for benefits was denied after a department claims deputy found that Jeun had failed to satisfy the requalification requirements of Iowa Code section 96.4(4).[1] In April of 1984, Jeun filed an additional claim for benefits in which he indicated that he had been employed by Joo Hyock, Inc. from March 7, 1984, until April 16, 1984. Jeun further indicated that he had earned $280 during this period. After an investigation, the department determined that Joo Hyock, Inc. was a covered employer and therefore concluded that the $280 Jeun had earned could be used for requalification purposes. Accordingly, on June 19, 1984, the claims deputy removed the disqualification and Jeun was allowed to collect benefits dating back to his original request for renewed compensation.

Throughout the period that Jeun collected compensation, he continued to list Kim's Academy as his last benefit year employer. In the Summer of 1984, Kim's Academy notified the department and objected to Jeun's continued receipt of benefits, asserting that Jeun had been employed at his own school of Tae Kwon Do for a considerable time. The department's fraud unit then began an investigation which revealed that Jeun had formed a school of instruction called Young Joe Jeun's Institute of Tae Kwon Do which was operated by Joo Hyock, Inc. The department further found that Jeun had been employed at his institute and earned deferred and concurrently paid wages since the Fall of 1983; Jeun had never reported these earnings on his weekly unemployment claim forms. As a result of its findings, the department concluded that Jeun was not eligible for further unemployment benefits because he

was not "available for work ... and ... earnestly and actively seeking work" as required by Iowa Code section 96.4(3) (1983). Similarly, the department held that Jeun had misrepresented his status as being "totally unemployed"[2] while he collected previous benefits. The $4,649.33 overpayment was then assessed against him.

■ On appeal, Jeun argues that the record does not support the department's determination that he was not available for and actively seeking work or totally unemployed as required by Iowa Code sections 96.4(3) and 96.19(9)(a). Before reaching these arguments, we initially note that our scope of review in cases such as this, which arise out of the Iowa Administrative Procedure Act, is limited to a determination of whether the district court made errors of law when it exercised its power to review the department's decision. *Gipson v. Iowa Dep't. of Job Service*, 315 N.W.2d 834, 836 (Iowa App.1981). In order to make this determination, we apply the standards set forth in Iowa Code section 17A.19(8) to the agency's decision and then ascertain whether our conclusions are the same as the district court's. *Jackson County Hospital v. Public Employment Relations Board*, 280 N.W.2d 426, 429–30 (Iowa 1979).

■ When a claimant maintains that an agency's decision is unsupported by substantial evidence, it is incumbent upon us to review as a whole the evidence contained in the record made before the agency. *Gipson*, 315 N.W.2d at 836; Iowa Code § 17A.19(8)(f). Such evidence is "substantial" if a reasonable person would find it an adequate basis for the decision reached. *City of Davenport v. Public Employment Relations Board*, 264 N.W.2d 307, 311 (Iowa 1978).

■ We have reviewed the record in its entirety and conclude that it contains substantial evidence supporting the depart-

---

**1.** Section 96.4(4) provides that if an individual has drawn benefits in any benefit year he must, during or subsequent to that year, work in and be paid wages for insured work totalling a minimum of $250.00.

**2.** "Total unemployment" is defined in Iowa Code section 96.19(9)(a) as follows:
  An individual shall be deemed "totally unemployed" in any week with respect to which no wages are payable to him or her and during which he or she performs no services.

ment's determinations. The department's investigation revealed that Jeun was the president of Joo Hyock, Inc. and had operated Jeun's Institute of Tae Kwon Do since the Fall of 1983. On November 3, 1983, the Des Moines Register printed a feature article concerning Jeun's institute. The article reported that the institute offered classes Monday through Saturday and that classes were also being taught at the Des Moines Area Community College and through the Des Moines Public School's Adult Education Program. In addition, the institute published a newspaper advertisement which stated that it was open from 10:00 a.m. to 9:00 p.m. Monday through Friday and from 10:00 a.m. to 3:00 p.m. each Saturday. The advertisement contained a picture of the petitioner and referred to him as the "master instructor."

Significantly, the minutes from various corporate meetings held by Joo Hyock, Inc. fully corroborate the above findings. In addition, at a meeting held February 3, 1983, the Board of Directors[3] of Joo Hyock, Inc. passed a resolution to pay Jeun $700 per month for his "overall management of the facility, including scheduling classes, publicity, accounting and the general direction of all related activities." The records from that meeting further indicate that the corporation agreed to pay Jeun $17 per hour for teaching classes, conducting demonstrations and testing. Moreover, the record indicates that Jeun's Institute had begun negotiations with a number of local organizations for instructions and demonstrations. Finally, the minutes of a meeting held June 24, 1984, reveal that Joo Hyock, Inc. was indebted to Jeun for over $17,000 for his services and for loans which he had incurred on behalf of the corporation. Joo Hyock, Inc. had been unable to compensate Jeun as these obligations became due because of financial problems.

■ Jeun argues that the above evidence is insufficient to support the department's findings because the precise number of hours that he actually worked at the institute is not clear, and because he was not paid regularly. We agree with the department and district court, however, in concluding that the evidence is sufficient to establish that Jeun devoted such an amount of time to render him essentially unavailable for other employment. Furthermore, we agree with the department's finding that the seminal inquiry is not whether Jeun had actually been paid during the period in question, but whether he had earned wages or fees that were *payable*. In this regard, we think that the department and district court properly utilized the rationale employed by the superior court of Pennsylvania in *Muchant v. Unemployment Compensation Board of Review*, 175 Pa.Super. 85, 88, 103 A.2d 438, 440 (1954), where the court noted that:

> ... [T]he purpose of unemployment compensation is to provide temporary benefits for the worker who is unemployed through no fault of his own. It was not designed to insure a weekly income to those engaged in business ventures who may not realize a profit therefrom during various weekly periods. However, if it is established that the claimant is actually engaged in the conduct of such an enterprise, the fact that he realizes no present weekly profit from the business or the services rendered cannot operate to make him eligible for unemployment compensation benefits.

Jeun further attempts to assert that he was "employed" only during the period when he earned the $280 which permitted him to requalify for additional unemployment compensation; he maintains that during other periods, he aided Joo Hyock, Inc. as a volunteer. We fully concur with the district court's conclusion that such an assertion strains credibility. Moreover, we note that the hearing officer explicitly stated that the testimony of the corporation's secretary, Bill Smith, in this regard was not credible. At this juncture, we reiterate our well established adherence to the principle that, " 'it is the function of the agency as trier of fact to determine what part of the testimony ... to accept or reject, and

---

3. The board was composed of the petitioner, who served as president, Sonya Marker who served as vice president and treasurer, and Bill Smith who was elected secretary.

on review the determination of credibility should not be overturned unless the court can say that the hearing examiner erred.' " *Elliot v. Iowa Dept. of Transportation*, 377 N.W.2d 250, 255 (Iowa App.1985) (quoting *Russell v. Gardner*, 256 F.Supp. 1022, 1023 (N.D.Iowa 1966)). Finding no evidence to establish that the hearing officer erred in the present case, we adopt the department's conclusion.

■ Jeun further argues that the department and district court erred in requiring him to shoulder the burden of establishing that he had been available for work during the period in question. Although Jeun acknowledges that a claimant seeking unemployment compensation bears the burden of proving eligibility for benefits, *see Walles v. Iowa Employment Security Comm'n.*, 219 N.W.2d 539, 540 (Iowa 1974), he relies upon *Gipson v. Iowa Dept. of Job Service*, 315 N.W.2d 834, 836 (Iowa App. 1981), in support of his argument that because his alleged misrepresentation was the seminal issue in this case, it was incumbent upon the department to prove that he was not "available" within the meaning of section 96.4(3) of the Code. We think that this reliance is misplaced.

In *Gipson*, this court held that in an action pursuant to Iowa Code section 96.-5(8), the department and not the claimant bears the burden of establishing that the claimant is disqualified from the future receipt of benefits because of a prior misrepresentation or act of fraud which he perpetrated upon the department with the intent to deceive. *Gipson*, 315 N.W.2d at 836. As noted in *Gipson*, the claimant's eligibility is not an affirmative issue under section 96.5(8). *Id.* By contrast, where misrepresentation is alleged, the claimant's eligibility during the period in question remains a determinative inquiry: the receipt of benefits for which the claimant was not in fact eligible provides the ground stone of misrepresentation as that term is defined in

Iowa Code section 96.16(4)[4]. We think that where, as here, eligibility remains a seminal issue, the burden of proving such status properly remains with the claimant. *See* 81 C.J.S. Social Security § 275 at 556–57 (1977) (the burden of proving entitlement to benefits generally never shifts from the claimant.)

Moreover, we note that in analogous situations a number of other jurisdictions have similarly held that the burden of proving eligibility rests upon the claimant. For example, in *Baker v. Department of Employment Security Industrial Commission*, 564 P.2d 1126 (Utah 1977), the Supreme Court of Utah confronted a case factually similar to that currently before us. In *Baker*, the Utah Industrial Commissioner assessed an overpayment of unemployment benefits to the claimant after it was found that he had knowingly withheld "the material facts of his work and earnings to receive benefits to which he was not entitled." 564 P.2d at 1126. In affirming the assessment against the claimant and the denial of his request for future payments, the court explicitly stated that, "[t]he initial and continuing burden of proof to establish eligibility to receive benefits was upon the [claimant]." 564 P.2d at 1127.

Similarly, in *Turner v. Appeal Board of Michigan Unemployment Compensation Commission*, 332 Mich. 704, 707, 52 N.W.2d 561, 563–64 (1952), the Michigan Supreme Court considered a case concerning a claimant's alleged acts of misrepresentation in order to receive unemployment compensation. In ordering that the claimant should be required to make restitution for the benefits which he received but was not entitled to, the court noted that, " . . . to prevail the claimant must have sufficient proofs offered in his behalf to establish that he meets the conditions of eligibility. To this extent he has the burden of proof."

---

**4.** "Misrepresentation" as defined in Iowa Code section 96.16(4) (1985) consists of the following elements:

    1. The Claimant must have received benefits.
    2. It must be determined the Claimant was not eligible for the benefits which he received.

    3. The receipt of the benefits must have been based upon a non-disclosure or misrepresentation.
    4. The non-disclosure or misrepresentation by the Claimant must be of a material fact upon which basis the agency paid benefits.

332 Mich. at 710, 52 N.W.2d at 565. Several other jurisdictions which have reached the identical conclusion in comparable circumstances include Idaho, *see Guillard v. Dep't. of Employment,* 100 Idaho 647, 654, 603 P.2d 981, 987 (1979), Washington, *see In re Townsend,* 54 Wash.2d 532, 533, 341 P.2d 877, 878 (1959), and Missouri, *see Haynes v. Unemployment Compensation Comm'n.,* 353 Mo. 540, 183 S.W.2d 77, 80 (1944). We similarly conclude that Jeun shouldered the burden of establishing his eligibility for compensation during the period at issue in the present case. Accordingly, we find no error in the department's conclusion that Jeun was required to estab-

lish that he was available for and seeking employment during this time. Our review of the record persuades us that Jeun failed to establish this item and that the evidence adduced by the department disclosed that he misrepresented his status as being totally unemployed. Consequently, the judgment against him is affirmed.[5]

5. Parenthetically we note that the department has in this appeal asked us to hold that the hearing officer erred in requiring the department to establish the additional elements of misrepresentation which are set forth in section 96.16(4) of the Iowa Code. We decline from addressing this issue because the department did not object to this allocation of burdens before the trial court and therefore it is not properly before us.